No. 38,702

Oliver P. Allen, *Appellee*, v. R. W. Bowling, *Appellant*.

(249 P. 2d 679)

486

Opinion
filed November 8, 1952.

*Archie T. MacDonald,* of McPherson, argued the cause, and *Russ B. Anderson,* of McPherson, was with him on the briefs for the appellant.

*Howard W. Harper,* of Junction City, argued the cause, and *Lee Hornbaker,* of Junction City, and *L. H. Ruppenthal,* of McPherson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by one real estate broker against another to recover one half of the commission for the sale of a ranch. Plaintiff prevailed and defendant has appealed.

The action was tried by the district court without a jury. Appellant, R. W. Bowling, lived in McPherson, and appellee, Oliver P. Allen, lived at Alma. Appellant's principal contention is that the minds of the parties had not met on the subject of any particular ranch or on a division of the commission and hence there was no valid and enforceable contract. In order to avoid needless repetition that subject will be treated later.

The trial court made findings of fact and conclusions of law as follows:

"1. Plaintiff and defendant are duly licensed real estate brokers in accordance with the laws of the state of Kansas.

"2. In the late summer of 1950, one Dave Weaver of Geary County, Kansas, listed his ranch for sale with plaintiff, fixed the sale price at $100,000 and agreed with him the realtor's commission would be $2,000. The ranch is also known as the Weaver ranch, the Powers ranch, and as the Deerhorn ranch.

"3. On October 15, 1950, the defendant wrote a letter to plaintiff stating he had three buyers for ranches and described in general terms what his buyers wanted and requested plaintiff to write a full description and price of any places he had available and suggested a division of the commission.

"4. On October 22, 1950, plaintiff replied to defendant's letter stating he would be glad to work with defendant on a fifty-fifty basis by dividing the commission equally, and gave defendant a full description of the ranch, less its name and legal description.

"5. On October 24, 1950, defendant wrote plaintiff accepting plaintiff's terms and suggested a trip by his buyer to see the ranch.

"6. On October 26, 1950, plaintiff met defendant and one Julian Sundgren at Alma, and at defendant's request plaintiff gave him and Sundgren a more complete description of the Weaver ranch. Defendant stated he knew of the place and that Sundgren would not be interested in it; that the place had no

water, the pastures were spotty and it would not be satisfactory to Sundgren. Plaintiff then described to defendant and Sundgren all the improvements recently made at the ranch; how Dave Weaver had brought in electricity, built ponds, sprayed the pasture and fully described the present condition of the ranch, and suggested they go and look at it, after which defendant stated that Sundgren would not be interested, and that he and Sundgren would return to McPherson via Council Grove, Kansas, and left plaintiff. That immediately after defendant and Sundgren left plaintiff they drove directly to the Weaver ranch, viewed it, and thereafter the Sundgren family purchased it for $100,000 and agreed to pay the realtor's commission of $2,000. One thousand dollars of this commission has been paid to defendant and the said Sundgren has intervened herein and paid the remaining $1,000 into court.

"7. That defendant and Julian Sundgren drove to Alma to meet plaintiff and to view the ranch about which plaintiff had written defendant; that prior to the conversation between the three of them at Alma defendant had not mentioned the Weaver ranch to Sundgren either as the Weaver ranch or by any other name.

"8. Defendant testified he had the Weaver ranch listed for sale, but offered no other evidence on the subject. Weaver testified he had not listed it with defendant.

"9. Defendant testified when he and Sundgren viewed the ranch on October 26, 1950, it was a different place than when he last saw it; that it had been improved a great deal; that the sumac had been sprayed and was dead; that the lespedeza looked fine.

"CONCLUSIONS OF LAW

"1. Defendant agreed with plaintiff to divide equally any commission earned if plaintiff could locate a ranch which his buyer would take. Plaintiff did this and is entitled to one-half the commission.

"2. The plaintiff should have judgment against defendant for $1,000 and costs, and the sum of $1,000 paid into court by Gene Sundgren as intervener should be paid over to plaintiff."

Appellant filed no motion for judgment on those findings and does not now contend they compel judgment in his favor. He filed a motion for additional findings, to strike and to modify portions of some of the findings made and for judgment on the ground the evidence disclosed no valid contract. We deem it unnecessary to encumber the record with a lengthy recitation of the various portions of the motion. A thorough study of the entire record discloses that although there may be some slight inaccuracies in a few statements contained in the findings they are not of a character which adversely affects appellant's substantial rights. Under the mandate of our civil code this court is obliged to disregard the complaints. (G. S. 1949, 60-3317.) See numerous cases collected under the statute. Touching additional findings which appellant sought we observe they are partially included in those made by the court. Those not

included will be treated under a discussion of appellant's contention there was no valid contract. We conclude the court did not commit reversible error in overruling appellant's motion attacking the findings made.

What about appellant's contention the evidence disclosed no enforceable contract for a division of the commission? Appellant argues there was no agreement concerning the sale of a specific ranch or on the exact division of the commission. Relative to the first part of this contention appellant is correct insofar as communications by mail prior to the personal interview at Alma are concerned. Appellant's first inquiry of appellee by letter of October 15 did not elicit the name or names of appellee's clients who had listed ranches with him for sale and appellee's answer on October 22 did not supply that information. Appellant requested the court to make the following findings:

"(1) That plaintiff, after describing the Weaver ranch in detail, at the cafe in Alma, then for the first time identified it as the ranch owned by Dave Weaver; that defendant thereupon told plaintiff that he had the ranch listed, and had shown it, and that he did not need plaintiff's help in making the sale.

"(2) That plaintiff testified that he did not intend to let the defendant know the identity of the ranch in his, plaintiff's letter of October 22, 1950, because he was afraid that the defendant might try to go around plaintiff on plaintiff's listing of the Weaver ranch. The defendant testified that he was not aware that the ranch to which plaintiff referred in his letter of October 22d was the Weaver ranch until it was identified by the plaintiff in the restaurant at Alma, Kansas."

For the purpose of our review we may consider the requested findings as having been made. A part of the first above requested finding is contained in the court's finding No. 7. Did the fact appellee refused to state the name of the owner of the ranch in the correspondence defeat his right of recovery? Manifestly it did not. The reluctance of appellee to state the ranch owner's name in the correspondence may have been well founded, as will presently appear. There was no written or oral listing of the ranch with appellant. Weaver, the ranch owner, testified, in substance: He had not listed it for sale with appellant; his only previous contact with appellant had been in the spring of 1949, long prior to the improvements of the ranch, when appellant, another broker and a buyer had driven to the ranch on one occasion and asked him what he would take for it. The trial court was not obliged to resolve the conflicting evidence as to a listing of the ranch with appellant in the latter's favor.

Moreover, the fact appellant did not know from the correspondence whose particular ranch appellee had in mind ultimately became quite immaterial. He discovered that from appellee in the personal conference at Alma. Notwithstanding appellant testified he then notified appellee he was familiar with the ranch, had listed it and had shown it, that he did not need appellee's help and was not interested in the ranch, the fact remains appellee supplied him with all the new information concerning the complete overhauling and the vast improvements which had been made on the ranch. Appellant promptly acted upon the information so obtained and made a deal for the ranch.

It is true that in the personal conference at Alma appellant expressed disinterest in the ranch and that he and Julian Sundgren thereafter left appellee. But notwithstanding such apparent disinterest what did they do? They drove to the north end of the square in Alma, turned around, came back and parked in front of a real estate or abstract office. Appellant entered the office and Julian Sundgren remained in the car. What transpired in that office is not disclosed. As Sundgren started toward the office, appellant came out. Appellant and Julian Sundgren then drove to the Weaver ranch, examined it and found the various improvements concerning which appellee had advised them. They were impressed and the ranch was obtained in a trade transaction. Title was taken in Eugene Sundgren, brother of Julian Sundgren who had accompanied appellant to the ranch. Manifestly the fact appellee had not advised appellant of the ranch owner's name in the previous correspondence did not, under the circumstances related, render the transaction invalid on the theory no specific ranch had been named in the correspondence.

Was the contract invalid by reason of a failure to agree on a division of the commission? In appellant's first letter of October 15, 1950, to appellee in which he inquired whether appellee had a ranch for sale appellant made no mention whatever of the amount of the commission which appellee was to receive for the sale of any ranch listed with him. Appellee's answer of October 22 contained a description of a 2,000 acre ranch including its improvements and stated it would cost $50 per acre or $100,000; that he had arranged to show the ranch to another party the next week.

Concerning the division of the commission appellee expressly stated in that letter as follows:

"If the deal does not go through, and you have a party you think it would fit *will be glad to work with you on 50, 50, split on commission.*" (Our italics.)

Appellant's next letter of October 24 to appellee did not reject appellee's specific offer to work with appellant on the basis of splitting that commission equally but merely suggested:

"We *should get* 5% on 1st $5,000—2½% on balance." (Our italics.)

Appellant and Julian Sundgren reached Alma October 26, the day appellee received appellant's last letter. Obviously when appellant then pretended he was not interested in the Weaver ranch nothing further was said by appellee concerning the commission basis upon which he had agreed to assist appellant. The Weaver ranch was listed for sale with appellee and not with appellant and on the specific basis of a $2,000 commission to appellee. This appellant knew. Furthermore·in the transaction as finally consummated it is admitted the commission agreed upon was exactly $2,000. The only difference was that the purchaser, rather than Weaver, the ranch owner, agreed to pay it under the terms of the trade. The purchaser, however, paid appellant only $1,000. He refused to pay him the remaining $1,000 and deposited it with the clerk of the court to abide the decision of the court.

It requires no citation of authorities to demonstrate the principle contended for by appellant that a valid contract requires a meeting of the minds of the parties. It is just as well established that an agreement and its terms may be ascertained by a combination of written communications and the acts of the parties. We think the court was justified in believing the correspondence together with the conduct of the parties precluded appellant's contention there was not an agreement on the amount of the commission and division thereof originally specified by appellee in his letter to appellant.

Another defense asserted in appellant's answer was that the contract was entirely without consideration. That defense cannot be sustained. Appellee's services constituted ample consideration for the contract. Except for the new information appellee supplied, appellant's testimony discloses he would not have taken his client to the ranch. No substantial rights of appellant were prejudiced in the course of the trial.

The judgment must be affirmed. It is so ordered.