No. 39,149

J. O. HENDERSON, *Appellee*, v. W. A. TALBOTT, *Appellant.*

(266 P. 2d 273)

Opinion filed January 23, 1954.

E. P. *Villepique*, of Wichita, argued the cause and I. H. *Stearns*, of Wichita, and *Walter L. McVey*, *Lawrence McVey*, and *Walter L. McVey, Jr.*, all of Independence, were with him on the briefs for appellant.

*John M. Wall,* of Sedan, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages alleged to have been sustained by plaintiff because of water impounded on his land as a result of the defendant's construction of a dam. The plaintiff recovered and the defendant appeals.

The action was commenced on October 18, 1951, by the filing of the petition. Subsequently defendant filed a motion to strike one sentence from such pleading and to make other allegations thereof more definite and certain. This motion was sustained to the extent it required plaintiff to make certain allegations of the petition more definite and overruled in all other particulars.

Thereupon, and on May 13, 1952, plaintiff filed his amended petition which, like the original pleading, contained two causes of action and will hereafter be referred to as the petition.

Omitting its prayer and formal averments the petition, as it relates to the first cause of action, states in substance that plaintiff and defendant were each the owner of a farm (describing them) in Montgomery county, joining diagonally at the center of section 23, township 32, range 13 east, and then alleges:

"THAT running across the Plaintiff's property, in a northeasterly direction, is a small, natural water course which crosses the east line of the Plaintiff's property and extends generally northeasterly onto the defendant's land. That some time during the summer of 1949, the exact time being unknown to this Plaintiff, the defendant commenced building and built a dam across said natural water course, said dam being located on the defendant's land, and being sufficient heighth, that the water impounded by said dam was backed up onto said land of the Plaintiff. That the Plaintiff at no time authorized the defendant to back water onto his premises or ever gave any consent to the water being impounded upon his premises.

"In September, 1949, the Plaintiff advised the defendant through the defendant's employee, one C. A. Paxton, that water was being backed on his premises, and sometime shortly thereafter, the plaintiff was advised by the said C. A. Paxton that the dam would be lowered or the water level lowered so that no water would be impounded upon the premises of the plaintiff. That sometime thereafter, the water was lowered some, but that since the latter part of October, 1949, the defendant has continued to impound water to such an extent that the water backed onto the plaintiff's premises and that although the defendant has, on numerous occasions, been requested to lower the dam or cease impounding water to the extent that water would be backed up on to the plaintiff's premises, the defendant has failed and refused to lower said water level.

"THAT located on said Plaintiff's land, near the head of the water course which was dammed by the defendant, is a spring which constantly supplied water for the cattle pastured in the pasture belonging to the plaintiff, adjacent to both sides of said natural water course. That the impounding of water by the defendant caused said water in said spring to rise to such an extent that the spring has been covered over with impounded water and rendered useless for a supply of clean fresh water for the plaintiff's livestock. That the backing of water onto the land of the plaintiff has deepened the water in the natural water course to such an extent that it is necessary that the cattle pastured in said pasture be driven around the stream, rather than across said natural water course, and that the plaintiff in getting his cattle, go around the water course rather than across it. That this has greatly increased the time necessary to care for the cattle and has greatly inconvenienced the plaintiff to the use of his pasture.

"THAT prior to the building of the dam by the defendant, upon his premises, the plaintiff had a stream of running water in said spring, which furnished a supply of water for the plaintiff's cattle during the winter months without the necessity of the plaintiff cutting ice to secure water for his cattle, but since the water has been backed up onto his land, by the defendant's dam, it has been necessary during freezing weather for the plaintiff to cut ice, in order that his cattle could water.

"That by reason of the defendant's building of said dam and impounding of water so that it backed up on to the plaintiff's land, the plaintiff has suffered the following damages, to-wit:

"1. The plaintiff has been required to spend an additional one hour's labor each day from November 1, 1949, until May 13th, 1952, the date of the filing of this petition, in caring for his cattle and that the reasonable value of plaintiff's labor is One Dollar ($1.00) per hour, making a total due for additional labor in the sum of $924.00.

"2. That plaintiff in addition to the above, was required during the winter months of 1949, 1950, 1951 and 1952, to spend 150 hours additional time in cutting ice and watering his cattle and that plaintiff's services are reasonably worth $1.00 per hour, making an amount due plaintiff for cutting ice in the sum of $150.00.

"3. That plaintiff pastures approximately 50 head of cattle at all times and the loss of the use of the spring deprived said cattle of fresh, clear water and required said cattle to drink murky 'dead' water and further prevented the cattle from watering except at the upper end of the impounded water, thus causing the cattle to fail to gain by at least fifteen pounds per head, the amount of their normal expected gain, and that the reasonable value of said loss is thirty cents (30c) per pound or $4.50 per head for 50 head of cattle each year for the two years or a total amount of $450.00.

"THAT the defendant was grossly and wantonly negligent in the construction of the dam upon his premises so that it would back water upon the premises of the plaintiff; that the defendant has failed and refused to cease impounding water so that no water would be backed up onto plaintiff's premises and that the plaintiff is entitled to exemplary damages in the sum of $500.00."

The second cause of action of the petition makes all preceding allegations of that pleading a part thereof.  It then alleges:

"THAT the defendant still maintains the dam on the premises at said height that water is impounded and backed up onto the plaintiff's land and that the plaintiff has suffered and still suffers injury resulting from the wrongful acts of the defendant.  That said nuisance and inconvenience is continuous and will continue in the future and will result in additional injury to the plaintiff and in further litigation, unless the plaintiff have relief and equity; that the defendant should be required to lower said dam so that no water would be impounded upon the premises of the plaintiff and that said defendant should be perpetually enjoined and restrained from impounding any water so that it will be backed up onto the plaintiff's premises."

and prays that defendant be enjoined from impounding water so that it will back up onto plaintiff's land and that he be directed to lower his dam in such manner that water impounded by him will not encroach thereon.

So far as other pleadings are concerned it may be said defendant's answer consists of a general denial followed by specific denials of practically every factual allegation to be found in the petition and that plaintiff's reply denies generally any and all new matter asserted in such answer.

On issues as heretofore related this case came on for trial by a jury as to the first cause of action only.  At the trial defendant demurred to plaintiff's evidence for the reason it showed his cause of action was barred by the statute of limitations.  When this demurrer was overruled defendant presented his defense.  At the conclusion of the trial, after being instructed by the court as to the law, the jury returned a general verdict in favor of plaintiff, together with answers to special questions submitted by the court which read:

"1.  Q.  Do you find that the plaintiff has suffered damages within two years next preceding filing of his petition, as the proximate result of water being impounded and backed upon his land by the dam built and maintained by defendant on his land?  A. Yes.

"2.  Q.  If you answer question No. 1 in the affirmative, how much, if any, do you allow plaintiff for each of the following items:

"(a)  For additional work in going around the impounding water?  A. $345.00.

"(b)  For additional work cutting ice to water his cattle?  A. $24.00.

"(c)  For loss from failure of cattle to make the normal gain in weight? A. 3.50

"(d)  For exemplary or punitive damages.  A. 335.00

"3.  Q.  What date do you find the last alteration work was performed by defendant upon his dam?  A. On or about 4/1/50

"4. Q. The date you find the dam was constructed? A. June, 1949

"5. Q. The date you find that any water was impounded upon plaintiff's property? A. July, 1949

"6. Q. The date you find that plaintiff was advised or knew of the impounding of water upon his premises? A. July, 1949"

Following the return of the verdict, and in due time, defendant filed (1) a motion for judgment notwithstanding the verdict; (2) a motion to set aside the verdict and answers to special questions; and (3) a motion for new trial. Thereafter, each of these motions was overruled and judgment was rendered against the defendant in conformity with the general verdict. Thereupon, defendant gave notice of his appeal from the judgment; from the ruling on his demurrer to the evidence; and from the rulings on all post trial motions.

Although appellant assigns numerous errors the principal issue raised in all but one of them is whether appellee's cause of action is barred by the statute of limitations (G. S. 1949, 60-306, Third) providing:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"*Third.* Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated;   . . ."

More specifically, particularly since the parties concede the provisions of the foregoing statute are applicable, a disposition of the over-all issue, to which we have just referred, depends on the answer which must be given the following question: When, under the prevailing law and the confronting facts and circumstances, did appellee's cause of action accrue?

The gist of the trial court's rulings in connection with all such assigned errors is that the limitation period prescribed by the statute had not run on the injuries, pleaded and subsequently established, accruing within the two year period next preceding the date of the filing of the petition. To determine the correctness of these rulings and the judgment we must, in view of the general verdict, apply the law to the facts shown by the evidence favorable to appellee, except as particular matters may have been determined by the answers to the special questions submitted.

Turning to the record it may be said that when carefully reviewed we have no difficulty in concluding it discloses evidence establishing the allegations of the first four of the paragraphs of the petition heretofore quoted; evidence to sustain the finding of the jury (see special question No. 2, *supra*) respecting the compensatory damages claimed in the next quoted paragraph of that pleading; and evidence sustaining all other answers returned by the jury to the special questions.

A further examination of the record discloses evidence in substance to the effect that appellant constructed the dam on his own farm to dam up a natural watercourse without investigating the location of the watercourse above the dam; that he made no survey to ascertain the expected water level based upon the dam built or the effect it might have on the property of persons owning farms above it; that when appellee first made complaint regarding the dam appellant did not even know there was a spring on appellee's property; that after having been advised of the condition resulting from the dam and after having made alterations thereon in the latter part of August, 1949, which left four or five feet of water impounded on appellee's property, he made no attempt to ascertain the conditions existing on such property with the dam in its altered condition or talk to appellee regarding them; that appellant had some correspondence with appellee in November or December of 1949, but did nothing more on the dam until April, 1950, when it was lowered the second time; that this was before he had seen or talked to appellee; that later in April, 1950, appellant saw and talked with appellee for the first time; that thereafter nothing further was done respecting the dam and that water was still impounded on appellee's land on October 18, 1951, the date on which the action was commenced; and that during the time in question the amount of water impounded on appellee's land was not stationary but ebbed and flowed, depending on the season of the year and the amount of rainfall.

The question when a cause of action for damages because of overflow of land accrues is one beset with difficulties, on which the authorities are in great conflict and exhibit considerable confusion. This is true even in our own jurisdiction where it must be admitted there is some contrariety in our decisions.

Be that as it may we are convinced the rules, established by the great weight of authority and recognized and applied by our better

reasoned decisions, governing and decisive of such question as well as the question whether the flooding of land gives rise to a single right or successive rights of action are those succinctly set forth and stated in 56 Am. Jur., Waters, 529, § 45:

". . . In actions by riparian owners for damages for interference with the flow of a stream, the scope of recovery is usually held to depend on whether the injury is permanent or continuing. The weight of authority is to the effect that whenever the structure or obstruction impeding the flow of water is of a permanent character, and its construction and continuance are necessarily an injury, the damage is considered original, to be recovered in one action, and not continuous in character, and the statute of limitations begins to run from the completion of the obstruction, or at least from the time of the first injury. But when the construction and continuance of the structure are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such cases the statute of limitations begins to run from the happening of the injury complained of."

And in 56 Am. Jur., Waters, 858, 859, § 443:

"The determination of the question whether the flooding of land gives rise to a single right or successive rights of action depends ordinarily upon whether the injury or the causative condition is permanent or temporary. The rule prevailing in most jurisdictions is that if the injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result and the amount of the damage can be determined or estimated, a single action may and should be brought for the entire damages, both past and prospective. But if the overflow is merely temporary, occasional, or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that each reptition (repetition) of the overflow gives rise to a new cause of action for which successive actions may be brought."

For similar statements see 67 C. J., Waters, 729, §§ 70, 71. See, also, 5 A. L. R. 2d. Annotation, 322 to 325, incl., § 6, a part of an exhaustive annotation on the question when the statute of limitations commences to run against damages from overflow of land caused by an artificial construction or obstruction, where the following statement, supported by numerous authorities, appears:

"Where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, 'continuing' or consequential in nature, it has been held that the limitation period starts to run only when the plaintiff's land is actually harmed by overflow, and that, for the purpose of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent."

Upon resort to our decisions there can be no doubt that the foregoing rules are recognized and adhered to in this jurisdiction. Long ago in *K. P. Rly. Co. v. Mihlman,* 17 Kan. 224, we said:

". . . There are cases in which the original act is considered as a continuing act, and daily giving rise to a new cause of action. Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury. . . ."

Later in *Union Trust Company v. Cuppy,* 26 Kan. 754, we held:

"That the damming, or partial damming, of Little creek was in the nature of a nuisance; and that the plaintiff's cause of action for the damages which he sustained on account of such obstruction accrued at the time that he sustained such damages; and that the statute of limitations then commenced to run against his cause of action, and not before." (*Syl.* ¶ 4.)

And in the opinion said:

". . . The foundation of this action is the obstruction of a natural watercourse, causing damage to the plaintiff; and the cause of this obstruction was the filling-up of the natural channel of such watercouse. The building of the culvert did no injury. It assisted as far as it could in avoiding the injury; and if it had been made about four times wider than it was probably the injury would not have happened. The defendants had a right to construct and maintain their culvert; but it should have been a much larger culvert; and they had no right to fill up the natural channel of the watercourse, or to obstruct its waters, as they did. (See subdivision 4 of § 47 of the act concerning corporations.) It must also be remembered that the railroad was not built across the plaintiff's land. The defendants did not commit any trespass upon the plaintiff's land, or even enter upon it; and the plaintiff did not and could not obtain any compensation by virtue of any statutory condemnation proceedings, or any proceedings instituted under or by virtue of the right of eminent domain. The wrong committed by the defendants, or either of them, in the year 1870 or afterward, was in the nature of a nuisance, and a continued nuisance; and while possibly the plaintiff might at any time have had an action to abate the nuisance, yet he nevertheless had the right to sue at any time after any particular damage was done him, for the amount of such damage. It is possible, also, that the plaintiff might have waived his right at any time to consider the obstruction of the stream as a nuisance, and might have considered it as giving to the defendants a permanent right, a permanent easement upon his land, and might then have sued the railroad company for the permanent injury to his land and recovered for the injury to his land, and recovered for the injury as in a condemnation proceeding; but he was not bound to treat the obstruction as an easement, or to waive his right to treat it as a nuisance, and he has not done so; and therefore, whenever he sustains damages because of such obstruction or nuisance, a cause of action arises in his favor; and the statute of limitations does not commence to run on such cause of action until the cause of action has accrued. . . ."

See, also, *Kansas City v. Frohwerk,* 10 Kan. App. 120, 62 Pac. 432, which holds:

"Where a city so grades, paves, curbs and gutters its streets as to collect the surface-water from a large area and discharge it upon the property of one of its property holders, through a failure to provide suitable outlets for said water, the city has a legal right and it is its legal duty to terminate the cause of injury, and the damage thereby caused is a continuing damage." (Syl. ¶ 1.)

And in the opinion, in distinguishing *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631, relied on by appellant as sustaining his position the instant cause of action was barred by the statute, said:

". . . We think the distinguishing principle in these cases is suggested in the brief of the defendant in error, that in order to charge one as a continuing wrongdoer he must have a legal right and be under a legal duty to terminate the cause of injury. . . ." (p. 123.)

Another decision is *Buss v. Missouri Pac. Rld. Co.,* 120 Kan. 689, 244 Pac. 1059, which holds:

"An action for damage to crops caused by an obstruction to the flow of water placed in a natural watercourse is not barred by the statute of limitations until two years after that damage is sustained." (Syl. ¶ 3.)

A more recent decision, recognized and applying the same principles in an action for damages alleged to have been sustained by the plaintiff when salt water and oil field waste escaped from a pond maintained on an oil lease being operated by defendant to plaintiff's adjoining land, is *Peterson v. Texas Co.,* 163 Kan. 671, 186 P. 2d 259.

See, also, *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899, where, although we held that under the confronting conditions and circumstances the action was barred by the statute, we nevertheless said:

"The principal question presented in this appeal is whether or not the cause of action on which recovery was had was barred by the statute of limitations. The plaintiff, as we have seen, did not sue for a temporary injury or for any special damage or loss which he had sustained immediately before the bringing of the action, but he treated the injury as a permanent one and as a sort of an appropriation of an interest in his property and asked for all damages already sustained and which he might sustain in the future. He could have elected to have sued for temporary damages sustained within the statutory period preceding the bringing of the action, and for any subsequent injury or loss an additional action might have been brought. . . ." (p. 43.)

When the facts of this case as herein outlined are measured by the foregoing authorities we are forced to the conclusion the injuries for which appellee claims damages must be classified as temporary, not as permanent, and of such nature that each injury

sustained by him as a result of the construction of the dam caused a new cause of action to accrue. The result is that appellant's claim the specifications of error presently under consideration should be sustained because the trial court erred, in its rulings holding appellee's cause of action was not barred by the statute of limitations, under either the evidence or the facts as found by the jury, cannot be upheld.

In reaching the conclusion just announced we have not attempted to .distinguish and are not disposed to labor the divers cases cited by appellant in support of his position. It suffices to say that some of them can be distinguished because the structure involved was located on the land of the person seeking to recover damages; some are distinguishable because the action was to recover for permanent injuries to the real estate in question; others are not comparable for the reason, that exactly contrary to the situation in the case at bar, the nuisance created by the structure in question was not abatable and the injuries resulting therefrom were continuous and permanent; and still others are not in point because of wholly dissimilar factual situations. And it should be added that if there is language in any of such decisions indicating views contrary to those herein expressed under prevailing conditions and circumstances it is no longer entitled to weight and should be disregarded.

We turn now to other claims of error advanced by appellant as grounds for a new trial and for reversal of the judgment.

The first of these is that there is a discrepancy in Instruction No. 5 as given by the trial court in that it seems to advise the jury that if the evidence warranted it could allow appellee $1 per hour for 924 days for additional labor in caring for his cattle. It is argued this would exceed the statutory period of two years under the trial court's theory respecting the time when the cause of action accrued. We note the next Instruction, No. 5a clearly states, "Therefore plaintiff may recover, if at all, for those damages only, if any, accruing within the 2 year period next preceding the date of filing the petition herein, to-wit, October 18, 1951." There is nothing in the record to indicate the jury was mislead by the mistake or discrepancy in the Instruction of which appellant now complains for the first time. Therefore we must assume the jury followed the clear and unequivocal direction to be found in Instruction No. 5a. Moreover, the amount awarded for this item was less than appellee would have been entitled to under his testimony for the two year period.

Under such circumstances any error in the ruling complained of cannot be said to have prejudically affected appellant's substantial rights and, under statutory mandate G. S. 1949, 60-3317, error therein if any must be disregarded. See *Allen v. Bowling,* 173 Kan. 485, 249 P. 2d 679; *Blakeman v. Lofland,* 173 Kan. 725, 732, 252 P. 2d 852, and cases there cited.

Nor are we inclined to labor contentions advanced by appellant to the effect the petition contains no allegations charging him with gross and wanton negligence or warranting the recovery of exemplary damages; that there is error in the Instructions respecting the conditions and circumstances under which punitive or exemplary damages would be allowable; and that the evidence failed to support the finding and allowance of exemplary damages under the Instructions given by the court. In the first instance we believe that when carefully examined the allegations of the petition charge the appellant with specific acts and conduct amounting to gross and wanton negligence in constructing and maintaining the dam and the common nuisance resulting therefrom and, while they may not be all that are to be desired from the standpoint of model pleading, are sufficient to warrant the trial court's conclusion they state grounds for the recovery of exemplary damages. In the next, since we are not limited to the single Instruction of which appellee complains, our examination of the Instructions as a whole convinces us that the jury was fully and correctly advised as to the law applicable to the recovery of exemplary damages under the existing facts and circumstances. Lastly we are satisfied the record discloses enough substantial competent testimony to preclude a decision there was no evidence to support the finding and allowance of exemplary damages.

Perhaps a final point deserves attention. On first blush it may appear the answer to question 5 fixes July, 1949, as the only date on which water was impounded on the appellee's land. Not so. When all the answers to the special interrogatories are considered together and harmonized it is clear the jury interpreted that question as requiring it to fix the first date on which any water was impounded and answered it accordingly.

After an extended examination of the entire record and careful examination of the claims of error advanced by appellant we find nothing to warrant a reversal of the judgment. Therefore such judgment must be and it is hereby affirmed.

Wertz, J. (dissenting in part): In my opinion the evidence did not warrant any award of punitive damages and I therefore dissent from that part of the opinion affirming the judgment of the trial court which includes such damages.