(575 P.2d 1316)
No. 49,012

L. Frank Dougan, *Appellant,* v. Rossville Drainage District, *Appellee.*

Petition for review denied May 5, 1978.

Opinion filed March 17, 1978.

*J. Roger Hendrix,* of Marshall, Hawks, McKinney & Hendrix, of Topeka, for the appellant.

*J. A. Babicki,* of Topeka, for the appellee.

Before Foth, C.J., Abbott and Parks, JJ.

Abbott, J.: This is an appeal by L. Frank Dougan, the plaintiff landowner, in an action for damages to plaintiff's property caused by flooding. The trial judge granted summary judgment in favor of the defendant, Rossville Drainage District, after finding plaintiff's claim to be barred by the statute of limitations. (K.S.A. 60-513.)

The defendant, Rossville Drainage District, was established as an organized drainage district in 1905 and has operated as such since that time. Shortly after its creation, the defendant con-

structed a network of ditches and waterways for drainage purposes. During the period from 1942 to 1954, changes and alterations in the system were made by the drainage district without the knowledge and consent of the chief engineer of the Division of Water Resources.

When this action was commenced, the defendant's ditches and waterways collected the surface water drainage from approximately seven thousand acres of land between the towns of Rossville and Silver Lake, Kansas. The water is collected and carried east by the drainage system where it is deposited into Silver Lake. Plaintiff's land lies to the south of Silver Lake and is not in the defendant drainage district.

Silver Lake is a natural lake and is believed to be an old river bed. It was in existence when the government originally surveyed the area in 1862. (*Dougan v. Shawnee County Comm'rs,* 141 Kan. 554, 43 P.2d 223.) Water enters the lake from the west and drains from the eastern shore in a southwesterly direction through a natural waterway across plaintiff's property to the Kansas River. The drainage district ends at the western edge of Silver Lake. Neither Silver Lake nor the channel connecting Silver Lake to the Kansas River is in the Rossville Drainage District.

A county road runs east and west across the southern portion of plaintiff's land and across the waterway which drains Silver Lake into the Kansas River when the lake overflows. A floodgate has been installed in a culvert under the county road at its intersection with the waterway. The floodgate, which is on plaintiff's land and is operated by plaintiff, is opened to permit water from Silver Lake to drain into the river when the level of the lake is higher than the river. The floodgate is closed when the level of the river is higher than the lake to prevent river water from backing up into the lake and flooding plaintiff's land. When the floodgate is closed and the lake is overflowing, the lake cannot drain into the river and the extra water from defendant's ditches causes the lake to flood plaintiff's land.

Since 1954, plaintiff's land has been flooded twice—in March 1967 and October 1973. The parties have stipulated that on both occasions "the primary source of the flood waters was the Rossville Drainage District." After the 1967 flooding, defendant and the plaintiff's mother (who owned the land at that time) discussed a solution to the problem. As a result of the discussions, defend-

ant dredged the channel connecting Silver Lake to the Kansas River. The defendant drainage district dredged the channel at its own expense even though the channel was not owned by defendant nor within its district. Plaintiff's property was again flooded in October 1973. Plaintiff filed this case on February 11, 1974. Plaintiff requested (1) a permanent injunction enjoining the defendant from discharging water across plaintiff's property, (2) compensation for permanent damages to the real estate and (3) temporary damages for the loss of growing crops.

For purposes of defendant's motion for summary judgment, the parties submitted an agreed statement of facts. The trial judge found that plaintiff's land was permanently damaged in 1967, that the statute of limitations (K.S.A. 60-513[a][4]) commenced to run in October of that year and hence plaintiff's cause of action was barred. This appeal followed. The sole question presented on appeal is whether plaintiff's claims are barred by the statute of limitations (K.S.A. 60-513[a][4]). Plaintiff concedes there is an adequate remedy in law and therefore a permanent injunction would not be a proper remedy.

By stipulating to the facts the parties have placed this court in a position where we can determine what is shown by the stipulated facts as readily and as fully as the trial court. (*Wallace v. Magie,* 214 Kan. 481, 488, 522 P.2d 989.) We will give the benefit of all inferences that may be drawn from the stipulated facts to the party against whom summary judgment is sought. (*Timi v. Prescott State Bank,* 220 Kan. 377, 386, 553 P.2d 315.)

The question of when a cause of action accrues as a result of a party causing another's land to be flooded has been extensively litigated in Kansas. Not all of the Kansas authority is in harmony. Obviously, each case must be decided on its own facts, giving due regard to established law.

Kansas has adopted the rule of law that an upper proprietor of land may not gather and divert surface water from its natural course of flowage and thereby exceed the carrying capacity of the natural watercourse in which the surface water is deposited if that action causes damages of a serious and sensible nature to a lower landowner. (*Baldwin v. Ohio Township,* 70 Kan. 102, 108, 78 Pac. 424.) Logically, this rule has been followed even though the overflow and damage occurs some distance downstream from the point where the upper riparian proprietor discharges the surface

water into the natural watercourse. (*Grant vs. Kuglar,* 81 Ga. 637, 8 S.E. 878 [1889].) The upper riparian proprietor cannot compel a lower landowner to provide drainage facilities to avoid being flooded by a volume of water in excess of the natural drainage level which the upper landowner has caused to be discharged into the watercourse. (*Pierce Family, et al. vs. Magness Construction, et al.,* 43 Del. Ch. 425, 235 A.2d 268 [1967].)

The Kansas Supreme Court has considered whether the injury was permanent or temporary as the determinative factor in when the statute of limitations commences to run against damage from flooding caused by construction. In *Henderson v. Talbott,* 175 Kan. 615, 621, 266 P.2d 273, the Supreme Court approved language from 56 Am. Jur., Waters §§ 45 and 443 (now 78 Am. Jur. 2d, Waters §§ 35, 39, 122, 123, 128 and 367) to the effect that if an injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result, *and the amount of damages* can be determined or estimated, a single action for both past and future damages should be brought. *Henderson* adopts a rule which would allow as many successive recoveries as there are successive injuries, where the construction or continued existence of the structure is not necessarily injurious, but may or may not be so, or where the flooding is merely temporary, occasional, or recurrent, causing no permanent injury to the land. Successive recovery was also approved where the possibility or likelihood of the alteration or abatement of the causative condition existed. The statute of limitations starts to run when plaintiff's land or crops are harmed and each injury by flooding brings a new cause of action until the injury becomes permanent. (*Simon v. Neises,* 193 Kan. 343, 348, 395 P.2d 308.)

In *Henderson v. Talbott,* supra, the court determined that the injuries were temporary in nature and not barred by the statute of limitations as to any injuries that occurred within two years of the petition's being filed. There the amount of water on Henderson's land "was not stationary but ebbed and flowed, depending on the season of the year and the amount of rainfall." (P. 620.) The court found no permanent injury despite the fact the water was impounded behind a dam Talbott constructed on his land more than two years prior to the commencement of suit.

The reasoning and holding in *Henderson v. Talbott,* supra, has been reaffirmed in *Klotz v. Board of County Commissioners,* 176

Kan. 325, 330, 270 P.2d 281; *Spacek v. City of Topeka,* 189 Kan. 645, 648, 371 P.2d 165; *Simon v. Neises,* supra; *Lockridge v. Tweco Products, Inc.,* 209 Kan. 389, 397, 497 P.2d 131; and *Gowing v. McCandless,* 219 Kan. 140, 144-145, 547 P.2d 338.

Based on the stipulated facts, it would be unjust to require plaintiff to file suit following the 1967 flooding. Damages cannot be awarded on mere conjecture or speculation. The plaintiff's land has been flooded twice in the last twenty-four years. Had plaintiff been required to bring his action within two years of the 1967 flooding, his chance of recovery would have been slim. It would have been nearly impossible for plaintiff to have sustained the burden of proof as to permanent damages. Plaintiff's damages were not reasonably capable of judicial ascertainment. Although it was apparent there might be some damage in the future, their nature and extent would have been highly speculative. The flooding of plaintiff's land was contingent upon a number of events occurring at approximately the same time. First, a substantial rain had to occur at a time when Silver Lake did not have sufficient capacity to handle the additional water discharged into it by the drainage district. At the same time, it would be necessary for the Kansas River to be at flood stage. Flood stage on the Kansas River is affected by rains that occur upriver. The Kansas River level is further affected by the water storage capacity available at that time in the numerous reservoirs on the Kansas River tributaries. In 1967, it would have been highly speculative as to whether the necessary combination of events and circumstances would again occur in the proper sequence to flood plaintiff's land, and, if so, at what frequency.

The flooding in this case is temporary, occasional and recurrent. There is no indication or allegation that the flooding caused permanent injury to the land itself in 1967. We cannot say plaintiff's cause of action was barred by the statute of limitations under the facts before the court. This court cannot consider the magnitude of plaintiff's problems in supporting the degree of proof required in order for him to prove causation of his damages at trial.

This court did consider the plaintiff landowner's argument that the drainage district made changes between 1924 and 1954 in the waterways and ditches without the permission of the chief engineer of the Division of Water Resources in violation of K.S.A.

24-126. The plaintiff then relies on *Gowing v. McCandless,* supra, for authority that the waterways and ditches are abatable and not permanent until approved by the state, and hence his cause of action for damages occurring within two years of the commencement of suit cannot be barred by the statute of limitations. The drainage district maintains that permission of the chief engineer of the Division of Water Resourses was not necessary for the changes made. The stipulation does not set forth facts sufficient to bring the drainage district within the ambit of K.S.A. 24-126 with the requisite clarity required by law, and it therefore was not considered by this court.

Reversed and remanded.