Robert DOLPH, unmarried, Edward Dolph and Joyce Dolph, husband and wife, and Audrey June Dolph, unmarried, Plaintiffs-Appellants,

v.

Quinten L. MANGUS and Velma Mangus, husband and wife, and Myra Dolph, Evelyn Dolph and John Dolph, Defendants-Appellees.

No. 3–477A95.

Court of Appeals of Indiana, Third District.

Feb. 7, 1980.

George F. Stevens, Kenneth H. Lukenbill, Jr., Roy D. Burbrink, Stevens, Wampler, Travis & Fortin, Plymouth, for plaintiffs-appellants.

Jere L. Humphrey, Chipman, Morrison & Humphrey, Plymouth, for defendants-appellees.

GARRARD, Presiding Judge.

The plaintiffs brought this action for damages and injunction claiming that the defendants had altered the natural flow of surface waters causing flooding and erosion of some of plaintiffs' cropland. The defendants answered in denial, and also asserted the statute of limitations. After trial the court entered certain findings sua sponte and gave judgment for the defendants.[1]

The complaint asserted that there were two distinct natural drainage systems affecting plaintiffs' land and that each had been affected by acts of one or more of the defendants. These systems have been referred to throughout the litigation as the southern and the northern systems. We will retain those references and consider each separately since the findings treat them differently.

## I. Southern System

The court found that in 1948 the defendants installed an extensive tile drainage system on their own lands to collect surface and subterranean waters and that such water was released on defendants' land approximately forty (40) rods from plaintiffs' boundary. The force of the water quickly cut a gully to and across plaintiffs' boundary line and flowed over plaintiffs' land and ultimately into McKesson Ditch. At about the same time the defendants altered the other fork of the southern system so as to cast more water upon plaintiffs' land. The court found that these actions constituted a trespass but that plaintiffs' complaint, which was not filed until July 24, 1974, was barred by the statute of limitations.

The plaintiffs acknowledge that the six (6) year statute of limitations found in IC 34-1-2-1 applies to the claim before us. See Seigmund v. Tyner (1913), 52 Ind.App. 581, 101 N.E. 20; City of Lebanon v. Twiford (1895), 13 Ind.App. 384, 41 N.E. 844. It is the plaintiffs' position on appeal, however, that while the statute would bar a "permanent" injury created in 1948, the injuries complained of were of the type referred to as "temporary" or "recurring." Thus, they argue that recovery should have been permitted for the damages incurred up to six years prior to commencement of the action. The defendants respond that in reality the court found the existence of a prescriptive easement since more than twenty (20) years had elapsed since the origin of the injury.

We do not accept defendants' assertion that the court found a prescriptive easement. The essential difference between prescription and the operation of a statute of limitations is that the former is positive and creates rights while limitation is negative and destroys. Abel v. Love (1924), 81 Ind.App. 328, 143 N.E. 515, 520. To establish an easement by prescription the burden is upon the party asserting the easement to show actual, open, notorious, continuous, uninterrupted, adverse use. Brown v. Heidersbach (1977), Ind.App., 360 N.E.2d 614. Here the court repeatedly stated that it found plaintiffs' claim barred by the statute of limitations. Moreover, neither the defendants' answer nor the evidence adduced at trial were directed to prescription. Rather they merely asserted

---

1. Neither party requested the findings nor was the court required to make them pursuant to Indiana Rules of Procedure, Trial Rule 52(A). Accordingly, the findings are applied to the matters they deal with, but the judgment is deemed to be based upon a general finding as to any other matters or issues. TR 52(D); Kizer v. Davis (1977), Ind.App., 369 N.E.2d 439; Lamb v. Conder (1975), 166 Ind.App. 293, 335 N.E.2d 625.

the claims were barred by the statute of limitations.

As the plaintiffs have pointed out, many jurisdictions dealing with this type of problem have drawn a distinction between injuries termed "original" or "permanent" on the one hand and those referred to as "temporary," "transient," "continuing" or "recurring" on the other. *See* Annot., 5 A.L.R.2d 302. In the former category the courts have held that a plaintiff has but one claim for relief in which he may recover for all damages, past, present and prospective. In the latter category each new injury is treated as a new claim for relief and recovery is limited to that specific injury.

■ Thus, if the claim is of the permanent variety, the action must be commenced within the statutory period or it is barred. On the other hand, if the injury is of the temporary variety each new injury starts the limitations statute running anew with the effect that at any given time the plaintiff can recover the actual damage incurred for the various temporary injuries which have occurred within the statutory period preceding the filing of the complaint.

We also agree that Indiana subscribes to this "dual rule" distinction. *See City of North Vernon v. Voegler* (1885), 103 Ind. 314, 2 N.E. 821; *May v. George* (1913), 53 Ind.App. 259, 101 N.E. 393; *Cleveland, C. C. & St. L. Ry. v. Kline* (1902), 29 Ind.App. 390, 63 N.E. 483; *City of New Albany v. Lines* (1898), 21 Ind.App. 380, 51 N.E. 346; *Valparaiso City Water Co. v. Dickover* (1897), 17 Ind.App. 233, 46 N.E. 591; *Stein v. City of Lafayette* (1892), 6 Ind.App. 414, 33 N.E. 912.

The problem that arises in any given case, of course, is to determine into which category the injury properly falls. The annotation in 5 A.L.R.2d 302 collects the cases from the various jurisdictions and attempts to identify various factors the courts have deemed significant in particular cases involving waters overflowing the lands of another.[2] What is readily apparent is that no particular factor is controlling and that even within a single jurisdiction the cases are often irreconcilable. *See, e. g., Henderson v. Talbott* (1954), 175 Kan. 615, 266 P.2d 273.[3]

■ One additional observation may be made. Apart from its involvement with the statute of limitations, the underlying purpose in these distinctions is an effort to accurately assess the damages the plaintiff has suffered. Is the injury such that he should recover only for the damage experienced from a particular occurrence, or are the consequences sufficiently certain that a broader recovery should be permitted and required? In response to this concern it is reasonable that the courts have recognized that injuries of the "recurring" variety when continued over a protracted period of time may, through the regularity of their recurrence and the nature of the damage caused, become "permanent." In such cases, the statute of limitations should commence to run upon the permanent injury when its permanence is discernable. *See City of Stillwater v. Robertson* (1943), 192 Okl. 395, 136 P.2d 923 and cases cited in 5 A.L.R.2d 320 n. 12. *Compare Hayes v. St. Louis & S. F. R. Co.* (1913), 177 Mo.App. 201, 162 S.W. 266.

■ In turning to the case before us we note that the trial court made no express findings as to whether the injuries to plain-

2. These include (1) whether the structure causing the injury is necessarily injurious; (2) the extent to which the injurious result is certain and predictable; (3) whether the overflows are intermittent and caused only in conjunction with a supervening cause; (4) whether the structure causing the injury is permanent; (5) whether the structure was lawfully erected on property other than the plaintiffs; (6) whether the structure was negligently and improperly constructed, maintained or operated; (7) whether a nuisance created is abatable; (8)

which theory the plaintiff used in bringing his action.

3. "The question . . . is one beset with difficulties, on which the authorities are in great conflict and exhibit considerable confusion. This is true even in our own jurisdiction where it must be admitted there is some contrariety in our decisions." 266 P.2d at 278. *See also Archer v. J. S. Compton, Inc.* (1947), 238 Iowa 1182, 30 N.W.2d 92.

tiffs' land should be characterized as permanent or recurrent. However, it is our duty pursuant to TR 52(D) to consider the general finding for the defendants and affirm the judgment on any theory that is supported by the evidence and is not contrary to the special findings made by the court.[4]

While the flooding of plaintiffs' cropland might be considered a recurring type of injury, the complaint appears to have alleged permanent injury. The evidence favoring the decision supports the determination that in the more than twenty-five years which occurred between the installation of the defendants' tile system and the bringing of the action the damages had become permanent. Plaintiff Robert Dolph described the overflow as continuous. There was evidence concerning the gulleys that had quickly washed into the area in question. In addition much of plaintiffs' damage evidence described permanent damage and depreciated the value of 51 acres of plaintiffs' land by 50% as a result thereof.

Accordingly, we find that the evidence supports the conclusion that the injuries to plaintiffs' land had become permanent more than six years prior to commencement of the action and the court therefore correctly concluded the claim was barred by the statute of limitations.

## II. Northern System

The second major issue presented concerns actions of the defendants in constructing a series of tile drains on their land in 1972 which ultimately emptied into the natural watercourse known as the northern system. This system crossed over plaintiffs' land before reaching the McKesson Ditch.

Plaintiffs contend that the court found these acts were trespasses but refused to award damages because they had failed to join other potential concurrent tortfeasors and because the court mistakenly believed they had failed to sufficiently establish

their damages. We disagree with this assessment of the court's findings.

As a general proposition, in order for there to be legal liability for a tortious injury, the act complained of must be the proximate cause of the injury. *Louisville & Jeffersonville Ferry Co. v. Nolan* (1893), 135 Ind. 60, 34 N.E. 710; *Smart & Perry Ford Sales, Inc. v. Weaver* (1971), 149 Ind.App. 693, 274 N.E.2d 718. In addition, of course, the plaintiff has the burden of proof as to all the essential elements of a trespass, including causation of any claimed damage. 87 C.J.S. *Trespass* § 86; 27 I.L.E. *Trespass* § 8.

In considering the 1972 construction the court decree did find that there was evidence of damage to plaintiffs' land and crops near the east end of the McKesson Ditch but that such damage was the result of the overflow of *both* the northern and southern systems. The court found that the defendants had helped build an eight inch tile drain over the property of several landowners to the north and that the defendants, themselves, had installed a four and five inch tile drain on their land which connected to the eight inch tile.[5] The eight inch drain then passed back over the defendants' realty where it intersected the northern system. Thus, surface water from several owners besides the defendants was cast into this network. The trial court expressly found that water from the four and five inch drain merged with water otherwise collected in the eight inch drain and flowed into the northern system where it was carried for approximately a mile before entering the McKesson Ditch.

The court entered this critical finding,
"It becomes impossible to determine to what extent the damage in the area of the east end of the McKesson Ditch is caused by the flow from the Northern System and it also becomes impossible to determine how much, *if any*, of the increased flow in the Northern System re-

4. *See* footnote 1, *supra.*

5. This drain commenced with 120 feet of four inch tile and terminated with 240 feet of five inch tile.

sults from the spur of the ditch constructed partially upon the Mangus land. It thus becomes impossible to rule with any degree of certainty *whether damage actually results* as a result of the 1972 tile drainage system herein mentioned." (Our emphasis)

The court concluded that it was impossible to determine that the 1972 acts damaged the plaintiffs.

Thus, it does not appear that the court found the defendants were the cause of plaintiffs' damage and then refused to assess the amount thereof because of uncertainty. Instead it appears that the court found the plaintiffs had failed to sustain their burden of proof that the 1972 acts had been the cause of damage. Such a negative judgment will be reversed on appeal only if the evidence is susceptible to but one conclusion, and that is contrary to the one reached by the court. On the evidence before us we are unable to make that determination. Accordingly, the trial court should be sustained.

Affirmed.

HOFFMAN and STATON, JJ., concur.