**In the Matter of Aaron Ray DANFORTH and Deloy Ray Danforth, Children Under The Age of Eighteen Years.**

**Aaron DANFORTH, Appellant (Respondent Below),**

v.

**MADISON COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner Below).**

**No. 48A02-8605-CV-155.**

Court of Appeals of Indiana, Second District.

Aug. 31, 1987.

Rehearing Denied Nov. 24, 1987.

---

James D. Gillespie, Anderson, for appellant.

Thomas L. Hulse, Anderson, for appellee.

SHIELDS, Presiding Judge.

Appellant Aaron Ray Danforth (Danforth) appeals the trial court judgment terminating his parental rights over his two minor children, Aaron Ray Danforth, age 7, and Deloy Ray Danforth, age 6.

We reverse.

In August 1980, Danforth was arrested for armed robbery. He was subsequently convicted and incarcerated in the Indiana State Reformatory for two armed robberies and a burglary. From the time of Danforth's arrest and until May 1981, the children remained with their mother, Anna Danforth Fuller (Fuller), who was staying with her mother, Carolyn Parkhurst. When Fuller was arrested and incarcerated for burglary in May 1981,[1] the Madison County Department of Public Welfare (Department) removed the Danforth children from the Parkhurst home. The children were placed in foster care and adjudicated to be children in need of services.[2]

The children were brought to the Indiana State Reformatory to visit Danforth by Fuller, a caseworker, and others. Danforth visited with the children every four to six weeks until August 15, 1984. After that date, Danforth wrote to the caseworker to arrange for visitation, without success, because the Department was anticipating the eventual termination of his parental rights. Danforth then started sending letters and birthday cards to his children in care of the caseworker.

The Department filed a Petition to Terminate Parental Rights of Danforth and Fuller on February 22, 1985. A fact-finding hearing on the petition was held on December 10, 1985 and was concluded on January 22, 1986, five days after Danforth was released from the reformatory. On March 6, 1986, the trial court entered judgment terminating the parental rights of Danforth and Fuller.

---

1. Anna Fuller remained in jail until September 3, 1981 when she posted bond. In November 1983, Fuller was placed on probation for a period of eight years.

2. The dispositional decree in the CHINS case involving the Danforth children occurred on December 7, 1982.

Danforth appeals the trial court's decision and presents four issues for our review.[3] One issue is dispositive of this appeal:

Was there clear and convincing evidence to support the trial court's finding there was a reasonable probability the conditions that resulted in the removal of the children would not be remedied?

In determining whether the evidence is sufficient to support the trial court's judgment, we may not reweigh the evidence nor judge the credibility of the witnesses; we may consider only the evidence most favorable to the judgment. *J.K.C. v. Fountain County Department of Public Welfare* (1984), Ind.App., 470 N.E.2d 88; *Matter of Lozier* (1983), Ind. App., 453 N.E.2d 345.

To terminate parental rights, Ind.Code Ann. § 31-6-5-4 (Burns Supp.1986) requires the Department of Public Welfare to present clear and convincing evidence:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied;

(3) termination is in the best interests of the child;  and

(4) the county department has a satisfactory plan for the care and treatment of the child.

*J.K.C. v. Fountain County Department of Public Welfare* (1984), Ind.App., 470

N.E.2d 88; *Matter of VMS* (1983), Ind. App., 446 N.E.2d 632. If the State fails to meet its burden on any one of the statutory elements, the trial court's judgment must be reversed.

Danforth argues the State failed to present clear and convincing evidence to show a reasonable probability the conditions which resulted in the children's removal from his custody would not be remedied. In response, the Department claims its burden of proof as to Danforth was met by the evidence that 1) when Danforth was arrested, he was unemployed and living with relatives, whereas at the conclusion of the fact-finding hearing, Danforth was similarly unemployed and living in the home of his brother and his brother's girlfriend, persons with whom the children were unfamiliar and 2) at the time of one of the armed robberies, the Danforth children were in the van used by Danforth to escape the robbery site, thus endangering the children's lives.[4]

Our inquiry, then, is whether the evidence shows a reasonable probability the conditions pertaining to Danforth which led to the children's removal would not be remedied. Accordingly, it is critical to identify the conditions relating to Danforth.

The only evidence on this issue is the children were removed from Danforth because Danforth was incarcerated at a time when the children's mother was also unavailable.[5] Therefore, the Department's

---

**3.** Fuller has not appealed the judgment terminating her parental rights.

**4.** Thus, in its argument in support of its contention the evidence on termination vis a vis Danforth is clear and convincing the Department fails to claim the evidence upon which the dissent relies for its vote to affirm, Danforth's threat to Fuller, concerning Fuller and a caseworker, is relevant to the issue of Danforth's future incarceration. In fact, the Department fails to even mention the evidence in its argument. In any event, the statement was made at a removal review hearing held during Danforth's incarceration and at the time when he was being denied the previously provided visitation with his children at the reformatory. Perhaps the Department attributed the statement to the stress of the situation rather than to Dan-

forth's criminal "propensities." So, apparently, did the trial court. Its findings of fact fail to mention the statement but, instead, describe Danforth's unemployed status, his incarceration and parole, his residence with his brother, the children's presence in the van during a crime for which he was arrested and his failure to provide for the children while incarcerated.

**5.** The request to file the petition to terminate parental rights states the conditions prompting the childrens removal was:

"House filthy with animal urine and human urine saturating some beds and carpeting." Record at 13. This reference is to the home of Fuller's mother where the children were residing at the time of their removal. The petition further alleged the children were children in need of services due to:

burden of proof was to show, by clear and convincing evidence, Danforth's future incarceration was a reasonable probability.[6]

The Department focuses on Danforth's incarceration for a series of crimes in the summer of 1980 and the fact that when Danforth committed the armed robbery, "the children were in the van used by the father at the time the robbery was committed." Appellee's Brief at 15–16. This evidence raises the question of whether Danforth's past criminal conduct is clear and convincing evidence Danforth will engage in additional criminal conduct and again be incarcerated.

Danforth unquestionably committed serious crimes while he was a custodial parent and, in one instance, could have endangered his children's lives by having them with him in a vehicle he used to leave the scene of a robbery. However, that incident, the seriousness of which must not be overlooked, occurred more than five years prior to the termination hearing. In the interval, Danforth's incarceration has provided him with the opportunity for reformation and rehabilitation. It cannot be assumed he will resume his prior criminal activities as a basis for terminating his parental rights.

> "(1) [their] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of [their] parent ... or custodian to supply the child with necessary food, clothing, shelter, medical care, education or supervision;
> (2) [their] physical or mental health is seriously endangered due to injury by the act or omission of [their] parent ... or custodian...."

Id. This conclusory, statutory language fails to provide any factual basis for the removal.

6. Thus, the Department's reliance on Danforth's unemployment and his residence with relatives is misplaced because they were not conditions which resulted in the children's removal from his custody. In any event, although Danforth was unemployed at the time of the conclusion of the fact-finding hearing, he testified he had been released from the reformatory only five days prior to the hearing. Unemployment for five days under these circumstances is not clear and convincing evidence Danforth will always be unemployed. Further, unemployment *per se* is not a legitimate basis for terminating parental rights, although neglect, etc., frequently a by-product of unemployment, may provide an ap-

Again, we emphasize the issue presented is whether Danforth's parental rights should be terminated and not whether the prior order awarding custody of the children to the Department should continue or terminate. Thus, we must find the evidence of Danforth's past criminal activities is not sufficient to warrant the conclusion there is a reasonable probability he will be incarcerated again.

Because the Department did not prove by clear and convincing evidence there is a reasonable probability the conditions which resulted in the children's removal *vis a vis* Danforth will not be remedied, the trial court erred in terminating Danforth's parental rights. Of course, this determination does not impair the prior order adjudicating the Danforth children as in need of services nor its present judgment terminating Fuller's parental rights.

Judgment reversed.

HOFFMAN, J., concurs.

BUCHANAN, J., dissents, with separate opinion.

BUCHANAN, Judge, dissenting.

I believe cognizance should be taken of Ind.Rules of Procedure, Trial Rule 52(D)[1]

propriate basis. Next, Danforth's present residence with his brother and his brother's girlfriend may be an appropriate consideration in determining whether he should regain custody of his children, but it is not a basis by itself for terminating Danforth's parental rights because that was not the reason he lost custody. The mere fact the owners of the house are apparently unmarried and unfamiliar to the Danforth children fails to rise to the level of clear and convincing proof the residence is unfit, particularly when it cannot be assumed Danforth will regain custody of his children in the immediate future or at all.

In addition, we note there is evidence Danforth had a good relationship with his children, that the living conditions were very clean prior to his incarceration and finally, that Danforth had an ordinary father-son relationship with his children.

1. T.R. 52(D) provides in pertinent part:
"The court may make special findings of fact upon less than all the issues in a case when:
(1) special findings of fact are made but are not required under this rule; ...
...."

in this case. While some findings were made in this case, none were required. It is our duty to apply the findings to the matters with which they deal and view the judgment as based upon a general finding as to any other matters or issues. *Dolph v. Mangus* (1980), Ind.App., 400 N.E.2d 189. We should then affirm the trial court's decision if it is sustainable on any theory which is supported by the evidence and not contrary to a special finding. *Id.*

A review of the record convinces me that there is sufficient evidence to support the trial court's determination. The trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a reasonable probability of future deprivation of the children. *J.K.C. v. Fountain County Dep't of Pub. Welfare* (1984), Ind.App., 470 N.E.2d 88. The trial court need not wait until the children are irreversibly influenced such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *Id.*

It was Danforth's criminal propensities, and ensuing criminal conviction, that originally resulted in the removal of the children. The majority intimates that Danforth's incarceration has provided him with the opportunity for reformation and rehabilitation, an opportunity he did not seize upon according to the evidence. His criminal inclination continued even after four years of incarceration. He told Fuller "when I get out [of jail,] you and [the caseworker] are both dead, I'm gonna' blow you both away." *Record* at 232. Surely we need not wait for bleeding victims before we find sufficient evidence of the likelihood of Danforth's future incarceration. Danforth's behavior reflected in the record proves that there is a reasonable probability that his pattern of conduct which precipitated the removal of the children has not changed. Therefore, the majority's reasoning that the absence of a specific finding by the trial court of Danforth's threat implies that it disregarded

... findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or

his statement would not seem to be supported by T.R. 52(D). *See Sekerez v. Board of Sanitary Comm'rs* (1974), Ind. App., 312 N.E.2d 98, *on rehearing* (if a fact is not found in the findings of fact, a negative finding is not to be implied).

The judgment of the trial court should be affirmed.

general finding, if any, shall control as to the other issues or matters which are not covered by such findings."