No. 31,766

GEORGE L. KISER, *Appellee*, v. PHILLIPS PIPE LINE COMPANY, *Appellant*.

(41 P. 2d 1010)

Opinion filed March 9, 1935.

*Edward H. Coughlin, R. E. Coughlin,* both of Paola, and *G. P. Cantrell,* of Bartlesville, Okla., for the appellant.

*Karl V. Shawver,* of Paola, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by a farmer and dairyman to recover damages from the defendant pipe line company for the loss

of cream, injury to cows, loss of calves and a heifer and loss in valuation of land by reason of overflow from septic tanks and leakage of gasoline through earthen banks, and one particular leakage from a large gasoline tank which permeated the soil, ran down the draw from which his cattle drank water, filled his well and cistern and greatly reduced the value of his land, for which he claimed damages in the total sum of $2,046.50. The jury found in favor of the plaintiff in the sum of $750, and answered four special questions, and the trial court rendered judgment on the general verdict against the defendant for $750, from which defendant appeals.

The farm of the plaintiff consisted of 160 acres, through which the pipe line of the defendant company ran. The land sloped from the northeast to the southwest, and a draw ran through it in that direction, in which there was water during nearly all the year. In 1930 the defendant purchased from plaintiff thirty-five and one-half acres in the upper or northeast corner of plaintiff's farm, and in May, 1931, it constructed thereon two large gasoline tanks in connection with a pumping station and necessary kindred equipment. In 1932 there were some breaks in some of the earthen dikes, which released some gasoline into the drainage ditch or draw, and on November 19, 1932, a serious break occurred in one of the large gasoline tanks, permitting a very large quantity of gasoline to run down the drainage ditch which ran through plaintiff's farm.

The first assignment of error is in the admission of incompetent evidence given by two veterinary surgeons as to the effect on cattle drinking water having gasoline in it or on it. These witnesses stated they were treating it as similar in effect to that produced by crude oil, with which they admitted being more familiar. This matter of limited experience had only to do with the comparative weight of their testimony, but did not in any wise make their testimony incompetent.

Our attention is next directed to an apparent discrepancy in the date of loss of milk supply, a difference of about a month and a half where plaintiff alleges the loss at a specific sum per week, but the answer to a special question shows the jury did not allow plaintiff the full amount claimed therefor, which result might readily be reached by reducing the number of weeks or the rate of loss per week, or both, and therefore it is not a reversible error.

The next assignment of error concerns the element of damage to

the real estate and as to its being permanent or temporary damage, and this assignment of error concerns the introduction of testimony as to such damage, the giving of instructions on this question, the overruling of the motion for judgment on the answers to the special questions notwithstanding the general verdict, and the overruling of the motion for a new trial.

It was said in the opinion in *Dye v. Rule*, 138 Kan. 808, 28 P. 2d 758, with reference to the determination of the motion for judgment on the answers to the special questions, that we must look to the pleadings, the special questions with their answers and the general verdict.

The petition states that the value of plaintiff's land before the acts described as contaminating the water thereon and rendering the land of practically no value for farming purposes was a certain amount per acre for each of the two portions of it—forty-four and one-half acres in the northern portion, and eighty acres in the southern portion, and that the same was worth a certain amount per acre at the time of filing this action, making a difference of $20 per acre for the northern portion and $10 per acre for the southern portion. The petition contains a second cause of action for an injunction against the continuance of the leakage and drainage heretofore described. This second cause of action is not here for review, save and except as it may serve to show the theory of the plaintiff as to the damages being of a permanent or temporary character.

The answer of defendant, after certain admissions and a general denial, alleges that it purchased these thirty-five and one-half acres of the plaintiff with his full knowledge of the intended use thereof, paying a price therefor far in excess of the market value thereof, with his knowledge also of the slope and drainage of the land and the natural rights of an owner of upper land as to drainage. The answer also pleads estoppel. The reply is a general denial.

There can be no doubt about the petition pleading permanent damages and justifying the admission of testimony along that line, and because in pleading, as in many other matters, the greater generally includes the lesser, it would be rather harsh to say that such allegations of permanent damages would not include sufficient for temporary damages.

It certainly was not error to overrule the objections of the defendant to questions of plaintiff asking for the market value of the land before and after the alleged pollution by reason of the leakage.

The trial court, in its instructions, defined both permanent and temporary damages to land, and even if otherwise objectionable, the giving of such distinction in damages was justified by the very fact of a question being asked as to which it was in this case. Besides, the cross-examination of plaintiff showed that the productivity of the farm had not been lessened, and that he did not lose the use of the pasture except for a few weeks following November, 1932. Other witnesses were asked on cross-examination whether they regarded the damages as permanent or temporary. Our attention is not directed to any error in the language used by the court in making this distinction.

In the case of *Hall v. Galey*, 126 Kan. 699, 271 Pac. 319, it was held:

"An instruction to the jury that if the evidence sufficiently established that the damage to plaintiff's farm was permanent, the measure of damage would be the difference in the fair market value of the farm prior and subsequent to the ruination of the well, was a correct statement of pertinent law." (Syl. ¶ 3.)

All of the plaintiff's evidence in the case at bar on the question of the amount of damages was the fair market value prior and subsequent to the leakage. No other figures were given as to any other or different kind of damages. The defendant introduced no evidence whatever as to the amount of damages of either kind to the real estate.

8 R. C. L. 483 defines temporary damages in substance as the reasonable cost of repairing the property, with interest, which may include the value of the use thereof during the period covered by the suit, or it may be the diminution in the rental value of the property, together with such special damages to crops, improvements, etc.

Now the most serious matter here is that the jury, in answer to one of the special questions, found that the damage to the land was only temporary. There was sufficient evidence to support such a finding, but there is not a figure or estimate in all the testimony to show how much such damage was. There is no proportionate rule by which it can be ascertained from the permanent damage by reduction thereof or otherwise. So we have a general verdict based upon testimony as to permanent damage to the land and a finding that the real-estate damages are not permanent but temporary, which makes a case of inconsistency between the general verdict and the answers to the special questions in which situation the latter

must control. (R. S. 60-2918; *Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 620; and *Clark v. Missouri Pac. Rld. Co.,* 134 Kan. 769, 8 P. 2d 359.) In the latter case the answers required a larger verdict than the jury found in its general verdict.

The following are the special questions and answers thereto:

"1. If you find for the plaintiff in this action, you will please itemize the amount and items of damage sustained by him.

| | |
|---|---:|
| "A. Loss of cream income 1 year | $78.00 |
| Loss of cream income 8 months | 32.00 |
| Loss of G. & J. heifer | 25.00 |
| Damages of 3 cows | 38.25 |
| Loss of 2 calves | 10.00 |
| Loss in valuation of 44½ A. | 486.75 |
| Loss in valuation of 80 A. | 80.00 |
| Total | $750.00 |

"2. If you find that the plaintiff suffered any damage to his real estate, do you find that that damage was temporary? A. Yes.

"3. Do you find that the plaintiff's stock were injured by drinking water from the ditch on his premises? A. Yes.

"4. If you answer the above question in the affirmative, then state whether or not the plaintiff, by the exercise of ordinary care, could have averted that damage to his stock. A. No."

The answers to the special questions are consistent with themselves, although the answer to the second question eliminates the last two items shown in answer to the first question as being included in the general verdict of $750. The answer to the first question is informative of the items and amounts contained in the general verdict, rather than a separate and distinct finding of fact.

We find no errors as to any of the items of damage mentioned in the answer to the first question except the two items concerning real estate, and judgment should be rendered on the answers to the special questions, notwithstanding the general verdict, which erroneously included two items of permanent damage to real estate.

The judgment is modified to that extent and otherwise affirmed.