No. 47,866

Tommy L. Gowing and Patricia Gowing, *Appellees*, v. Layton McCandless and Lydian McCandless, *Appellants*.

(547 P. 2d 838)

Opinion filed March 6, 1976.

*Philip Shaffer*, of Salina, argued the cause, and *Frank C. Norton*, of Salina, and *Karl Shawver*, of Shawver & Shawver, of Paola, were with him on the brief for the appellants.

*Keith Martin*, of Payne & Jones, Chartered, of Olathe, argued the cause, and *Barry W. McCormick*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an action by upper landowners to recover $219,457.50 for alleged crop damages and $100,000.00 for punitive damages for an alleged obstruction of a watercourse by the lower landowners. (A second cause of action sought an order requiring the removal of the alleged obstructions, but was not resolved by the

trial court when this appeal was taken.) A jury awarded the upper landowners, Tommy and Patricia Gowing (plaintiffs-appellees), the sum of $4,575.00 for crop damages. The lower landowners, Layton and Lydian McCandless (defendants-appellants), have duly perfected this appeal.

The primary issue involves an application of the statute of limitations to the facts in the case. (K. S. A. 1975 Supp. 60-513 [4].)

The facts disclosed by the record may be summarized as follows. The Gowings own a 350 acre farm in Linn and Miami Counties. The McCandlesses own a 1,350 acre farm in Linn County, part of which is immediately south of and adjacent to the Gowings' land. In this area water flows southward through the Gowings' land to the McCandlesses' land, then empties into the Marais des Cygnes River which borders the McCandlesses' land. The Gowings allege in 1965, during timber-clearing operations, the McCandlesses obstructed the natural watercourse with trees and dirt which has prevented water from draining from the Gowings' land, thus damaging their crops. Pursuant to K. S. A. 24-105 and K. S. A. 82a-301 the Gowings sought crop damages for 1970, 1971 and 1972, punitive damages, and an injunction that the obstruction be removed. The Gowings dismissed a claim in the pleadings for permanent damages to their property.

The record reveals in the summer of 1965 Layton McCandless contracted with Leonard Long to clear timber on his land. This included clearing timber on land adjoining the Gowings' property. Long employed Elmer Rhoades who used a "Rome cutter" that shears trees off level with the ground. John Cornett with a bulldozer aided in the clearing by piling the felled timber near the edge of a ditch which served as a watercourse. Some trees, however, were felled into the ditch and others rolled from their piles into the ditch. The ditch which constituted the watercourse was ten to twelve feet deep in places and as much as twenty feet wide in places. In order to cross the watercourse John Cornett made two crossings one by shoving logs which were covered with dirt and the other by dirt filling. Later the log crossing was partially burned out and the dirt crossing was partially excavated. The parties disagreed as to the extent of the obstructions the trees and crossings made. Tommy Gowing testified these obstructions, coupled with a natural silting process, obstructed the watercourse.

Witnesses for the McCandlesses testified the watercourse was not obstructed. A Mr. Watson, who farmed the McCandlesses'

property, and two experts testified the watercourse was not affecting Gowings' runoff water. Various other reasons such as the natural process of trees falling into the watercourse, and floods on the Marais des Cygnes River carrying timber back up into the watercourse, were alleged to cause any obstructions present in the watercourse. Tommy Gowing and one expert rejected the contention that nature caused the obstructions.

Testimony also differed significantly as to the Gowings' damage. The Gowings contended the poor drainage caused water to stand in the ditches of their drainage system and standing water robs corn of oxygen. Corn seed rots in two or three days if covered with water. Even growing corn can't be covered with water for more than three days without damage. Patricia Gowing, a school teacher and the bookkeeper of the Gowings' household, testified from 1963-1965 the average corn crop was 184 bushels per acre. From 1971-1973 the average corn crop was 37.3 bushels per acre. The Gowings blamed the difference on the poor drainage. Witnesses for the McCandlesses blamed a variety of factors for the poor crops including heavy rainfall, late planting, the direction Gowing plowed the land, failure of Gowing to keep his ditches open, a heavy tractor which compressed the soil, having too shallow ditches and planting corn in "gumbo" soil which is poor soil for corn especially after corn is grown for a few years in the same location. The statistics of Patricia Gowing were attacked as being improperly figured because corn raised on other land might have been included and the amount of land involved in corn production was said to be underestimated.

Evidence was adduced showing the year 1970 was a bad year for all Linn County farmers. Indeed the office manager for the Linn County Agricultural Soil Conservation Service indicated for the years 1970, 1971 and 1972 the average corn yields were 60 bushels per acre in Linn County. However, the Gowings attributed their bountiful 1963-1965 harvest to "narrow row" farming which they contend increased their productivity far above the average farmer.

The Gowings filed their suit in April of 1972. They allege violation of K. S. A. 24-105 which reads in part:

"It shall be unlawful for a landowner or proprietor to construct or maintain a dam or levee which has the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor;  .  .  .  *Provided,* That the provisions of this section shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city.  .  .  ."

They also allege violation of K. S. A. 82a-301 which reads in part:

"From and after the passage of this act, it shall be unlawful for any person or persons, partnership, association, corporation, county, city, town, or township to construct any dam or other water obstruction; or to make or construct, or permit to be made or constructed, any change therein or addition thereto; or to make, or permit to be made, any change in or addition to any existing water obstruction; or in any manner to change or diminish the course, current, or cross section of any stream within this state without the consent or permit of the chief engineer of the division of water resources, in writing, previously obtained, upon written application to said chief engineer therefor. . . ."

Neither K. S. A. 24-101a, *et seq.*, nor K. S. A. 82a-301, *et seq.*, which the parties cite, contains a special statute of limitations. Therefore a two year statute of limitations applies. K. S. A. 1975 Supp. 60-513 (4) reads:

"The following actions shall be brought within two (2) years:

\* \* \* \* \*

"(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

\* \* \* \* \*

"The cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Basically the appellants argue Tommy Gowing was aware of the obstruction in 1965, and certainly by 1967 at the latest. Thus the appellants argue the 1972 suit is barred. In support of their argument the appellants point to 1965 when the timber clearing was being done by Elmer Rhoades and John Cornett. At that time Tommy Gowing complained about what was being done. Mr. Gowing told John Cornett he was messing up the drainage. About a week after the timber clearing, Mr. Gowing went on the McCandlesses' property and attempted to burn out the bulldozer crossing made of trees and covered with dirt. Mr. Gowing's testimony indicated he believed the water would be able to run through the obstructed watercourse for a year or so before the obstructions settled and the accumulation of silt began.

Patricia Gowing testified the corn yield dropped from 184 bushels per acre in 1963-1965 to 121 bushels per acre in 1966 and to 40 bushels in 1967.

The rule of law involved on this appeal is one normally en-

countered where damages occur when water overflows agricultural land. On this general subject our decisions are conflicting. In *Henderson v. Talbott,* 175 Kan. 615, 266 P. 2d 273, the court recognized:

"The question when a cause of action for damages because of overflow of land accrues is one beset with difficulties, and which the authorities are in great conflict and exhibit considerable confusion. This is true even in our own jurisdiction where it must be admitted there is some contrariety in our decisions." (p. 620.)

No attempt will be made in this opinion to venture into the thicket of Kansas cases beginning from statehood. Our recent decisions establish a trend in the law which controls our decision herein.

When this case went to trial the plaintiffs were not seeking to recover permanent damages to their land occasioned by the obstructions placed in the watercourse on the defendants' land. The posture of the case here presented is one in which the plaintiffs seek to recover *temporary damages* arising from the maintenance of obstructions in the watercourse on the defendants' land (alleged in the petition to be a continuing nuisance), and limit the recovery they seek to damages to their crops, sustained within two years prior to the filing of their petition, and punitive damages.

Where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, continuing or consequential in nature, it has been held that the limitation period starts to run only when the plaintiffs' land or crops are actually harmed by overflow, and for purposes of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent. (*Henderson v. Talbott,* supra; *Simon v. Neises,* 193 Kan. 343, 348, 395 P. 2d 308; Annot., 5 A. L. R. 2d 302 [1949]; and 78 Am. Jur. 2d, Waters, § 367, p. 800.) This rule is especially applicable if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative condition, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages. (*Henderson v. Talbott,* supra at 621.)

A number of our cases have permitted relief for damages caused by overflowing waters if brought within two years of the overflowing. (*Union Trust Company v. Cuppy,* 26 Kan. 754, [crop damage]; *Kansas City v. King,* 65 Kan. 64, 68 Pac. 1093; *Manufac-*

*turing Co. v. Bridge Co.*, 81 Kan. 616, 106 Pac. 1034, 28 Lns 156; *Beard v. Kansas City*, 96 Kan. 102, 150 Pac. 540; *Buss v. Missouri Pac. Rld. Co.*, 120 Kan. 689, 244 Pac. 1059 [crop damage]; *Henderson v. Talbott*, supra; and *Simon v. Neises*, supra, [crop damage].)

In the instant case the evidence does not show the cause of the injury to be permanent. In many cases injuries have been classified as temporary or recurring in nature when caused by an abatable nuisance or condition, or by defects which can be repaired or remedied at reasonable expense. Successive injuries of this nature have been held to give rise to separate and distinct causes of action. (Annot., 5 A. L. R. 2d 302, 339-340 [1949].)

It has frequently been said the principle upon which one is charged as a continuing wrongdoer is that he has a legal right, and is under a legal duty, to terminate the cause of the injury. (*K. P. Rly. Co. v. Mihlman*, 17 Kan. 224, 231; *Henderson v. Talbott*, supra at 622; and *Adams v. City of Arkansas City*, 188 Kan. 391, 402, 362 P. 2d 829.)

Under this rule the owner of land injured by overflows and poor drainage caused by an abatable condition or nuisance has the right to assume the condition or nuisance will be abated. Here the appellees presented evidence that the obstructions were not "permanent." That is to say, the obstructions could be removed from the drainage ditch. In a legal sense these obstructions were not "permanent" because they were not approved by the state. Moreover, the appellees presented evidence that the appellants agreed to examine the drainage ditch and consider removing the obstructions. The men who cleared the timber and who shoved the trees, dirt and debris into the drainage ditch testified for the appellees. Mr. Gowing testified on cross-examination by counsel for the appellants:

"Q. Mr. Gowing, was it your feeling that when you observed the obstructions about which you have testified in these ditches in 1965, that you thought they were going to affect you permanently?

"A. No, sir. Those ditches can be cleaned out any time. Since it was put in there, we planted our crops and done everything with the anticipation that the ditches would be cleaned out. And they could have been cleaned out any time.

"Q. But if they hadn't been cleaned out, you felt the damage was going to be permanent, isn't that correct?

"A. No. They can be cleaned out.

"Q. But the situation as it existed in '65, unless it changed, you felt it was going to exist permanently, isn't that correct?

"A. No, I didn't feel that way because I had hope that they would be cleaned out because that is the reason I was begging and pleading. I tried to

get those ditches cleaned out from the time it was put in there until McCandless left. [The McCandlesses moved to Salina on April 4, 1972.] Before he left, I was down there trying to get him to go down there and look at those ditches, and he said his boys would have to go down, and it ended up, they said they didn't have time to go down there, and then he left, and this is the only alternative, the reason I am siting here, is the only alternative that I have.

"Q. . . . [M]y question is whether or not you felt in 1965, if those things were placed in the ditches as you said, that you felt unless they were removed, that would permanently damage your property.

"A. No, I am not saying that."

Where permanent damages to the land are sought, and the evidence discloses permanent damages, the action claiming such damages must be brought within the two year statute of limitations. Thus in *Thierer v. Board of County Commissioners*, 212 Kan. 571, 512 P. 2d 343, the cause of action for permanent damages to farmland was held to accrue when substantial injury was reasonably ascertainable. (See also, *Spacek v. City of Topeka*, 189 Kan. 645, 647, 371 P. 2d 165; *Jeakins v. City of El Dorado*, 143 Kan. 206, 210, 53 P. 2d 798; and *McDaniel v. City of Cherryvale*, 91 Kan. 40, 43, 136 Pac. 899, 50 Lns 388.)

Since no permanent damage to farmland is sought in the case at bar and the evidence discloses only temporary damages, *Thierer*, upon which the appellants rely, is distinguishable. In *Thierer* a bridge across a stream was constructed with an elevated roadway on both approaches to the bridge by the county commissioners. This resulted in a change in water currents which washed out the plaintiff's crossing to his land. K. S. A. 82a-307 labels lawfully placed dams and bridges as "permanent" improvements or obstructions. The evidence there disclosed the bridge and road constructed to be a permanent obstruction.

Here timber which is felled and unlawfully pushed into a watercourse, but which could be removed from the watercourse, is not a permanent obstruction in the eyes of the law.

Accordingly the trial court properly found the appellees' causes of action were not barred by the statute of limitations. (The record sets forth only the pretrial order delineating the general issues without giving specific dates material to warrant a more exacting statement. Mr. Gowing testified he believed the action was filed in April 1972.)

The appellants complain of the trial court's failure to give instructions on contributory negligence, agency and a definition of

surface water, and in giving an instruction in accordance with K. S. A. 24-105 and K. S. A. 82a-301.

From the briefs it appears the jury was properly instructed on the law as heretofore related in this opinion, by giving the substance of the requested instruction on the applicable statutes and refusing the instructions on contributory negligence, agency and defining surface water, all of which were either immaterial or unwarranted on the issues to be determined from the evidence at the trial.

The verdict of the jury is supported by the evidence presented at the trial, and the judgment of the lower court is affirmed.