Robert MAXEDON, et al., Plaintiffs,

v.

TEXACO PRODUCING, INC., Defendant.

No. 86–1869–C.

United States District Court, D. Kansas.

March 31, 1989.

Opinion On Damages April 20, 1989.

John V. Black, Black & Mills, Pratt, Kan., Robert J. Roth, Michael L. Jones, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for plaintiffs.

Tim Mustaine, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court on defendant's motion for partial summary judgment on: (1) plaintiffs' request for injunctive relief, ordering defendant to clean up polluted water and soil on plaintiff's land, or, in the alternative, equivalent money damages to effectuate clean up; (2) plaintiffs' claim for aggravation and harassment; (3) plaintiff's claim for punitive damages; and (4) the claims raised by plaintiffs in Counts II, V, VII, VIII, IX, XI, XII of their "amended-supplemental petition", and in that part of Count XIII that involves damages to area 19, on the ground that these claims are barred by the statute of limitations.

The court notes that plaintiffs have failed to comply with Fed.R.Civ.P. 56(e) and D.Kan. Rules 206(c) in responding to defendant's motion for partial summary judgment. Rule 56(e) specifically states that the plaintiffs in this case, as the nonmoving party, may not rest upon mere allegations or denials in their pleading but must respond to defendant's motion with the types of evidentiary materials contemplated under the rule which set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The plaintiffs only provide the court with a three-page excerpt from a deposition of, the court presumes, Robert Maxedon, although even this is not clear, as the transcript does not have a face page or signature page at-

tached. Other than this deposition excerpt, the plaintiffs rely on bald assertions and denials to respond to defendant's motion. The plaintiffs also cite Kansas case law concerning summary judgment standards. Summary judgment is a rule of civil procedure and is governed by the Federal Rules of Civil Procedure and federal case law interpreting that rule. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1" (citation omitted.) *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. 477 U.S. at 249, 106 S.Ct. at 2510. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511. There is no requirement in Fed.R.Civ.P. 56 that the moving party negate the opponent's claim. *Celotex,* 477 U.S. at 329, 106 S.Ct. at 2556. The movant's burden of proving that there is an absence of a genuine issue of material fact "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325, 106 S.Ct. at 2554. "The movant must identify those portions of 'the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits if any' to demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c)." *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

The following material facts are uncontroverted.

1. This lawsuit was filed by plaintiffs in the District Court of Pratt County, Kansas, on October 7, 1986, and was subsequently removed to this court by defendant. Plaintiffs claim that defendant has polluted their land (the Southeast Quarter, the South Half of the Northeast Quarter, the East Half of the Northwest Quarter, of Section 25, Township 27S, Range 11W, in Pratt County, Kansas) with salt water, oil and refuse, in the course of its oil and gas operations on plaintiff's land. Plaintiffs are requesting both money damages and equitable relief in the form of an order that defendant clean up water and soil on the land. On plaintiff's version of the facts, the cost of the requested clean up work is $70,000. Plaintiffs are seeking to recover alleged crop damages of $10,000; damages for remediation of the polluted areas of $70,000; damages for "inconvenience" of $10,000; damages for "aggravation and harassment' of $25,000; and damages for wrongfully moving a fence, of $10,000. Plaintiffs also seek to recover $100,000 in punitive damages for defendant's alleged "willfully failing to remediate the polluted areas."

2. Defendant is the successor in title to oil leases on plaintiffs' property, is responsible for the operation of the leases, and operates salt water disposal systems and oil production equipment on the leases. Defendant first acquired any interest in the leases on December 31, 1984, and began its operations on the land shortly thereafter. The damaged areas of plaintiffs' land were surveyed by Laughlin and Simmons of Kansas, Inc., on November 20, 1987; excluding minor additional spills occurring since the survey, the damaged area totals 8.927 acres. The parties have stipulated that the land in question has an undamaged value of $600 per acre.

3. The damages alleged in Count II of plaintiffs' "amended-supplemental petition"

(which are shown as Areas 2 and 3 on the Laughlin–Simmons survey map) were caused by leaching from improperly plugged oil wells that were abandoned in the 1940s. The damaged area is sterile, and the sterile area did not increase in extent between May 1984 and May 1988.

4. The damages alleged in Count V of plaintiff's Amended–Supplemental Petition (which are shown as Area 7 of the Laughlin–Simmons survey map) were first caused in 1976, when the area was flooded by salt water. This area was also damaged by salt water overflows that happened from 1980 through the fall of 1983. The area of damages has increased since that time, as rainwater has spread the contamination. Plaintiff Robert Maxedon observed the spills that have contaminated Area 7, either at the time they occurred or shortly thereafter, and has been "trying to get [the pollution in that area] fixed ever since" 1976.

5. The damages alleged in Count VII of plaintiffs' Amended–Supplemental Petition (which are shown as Area 9 of the Laughlin–Simmons Survey map) first occurred in the 1940s. They arise either from an abandoned well that was improperly plugged or from a sludge pit created when wells in the area were drilled. The apparent damaged area has increased between May 1984 and May 1988 as the pollution has been spread by rainwater.

6. The damages alleged in Count VIII of plaintiffs' "amended-supplemental petition" (which are shown as Area 10 of the Laughlin–Simmons Survey Map) were caused by buried pipes abandoned in the 1930s and 1940s.

7. The damages alleged in Count IX of plaintiffs' "amended-supplemental petition" (which are shown as Areas 11 and 12 of the Laughlin–Simmons Survey Map) were caused by a sludge pit created when an oil well was drilled in the area in 1935.

8. The damages alleged in Count XI of plaintiffs' "amended-supplemental petition" (which are shown as Area 14 of the Laughlin–Simmons Survey Map) were caused by buried pipes abandoned in the 1930s and 1940s.

9. The damages alleged in Count XII of plaintiffs' "amended-supplemental petition" (which are shown as Area 18 of the Laughlin–Simmons Survey Map) were caused by spills from an oil pipeline, the first of which occurred five or six years prior to May 1988. Defendant does not operate and never has operated or maintained any oil pipeline near this area; Texaco Trading and Transportation, Inc., not a party to this lawsuit, does operate a nearby pipeline.

10. The damages alleged in that part of Count XIII of plaintiffs' "amended-supplemental petition" which is shown as Area 19 of the Laughlin–Simmons Survey Map were caused by an old sludge pit dating from the 1930s. Four years prior to May 1988, some of plaintiffs' tenant's cows got into this area, and were lost as a result.

11. Plaintiff Robert Maxedon has made numerous complaints about the alleged pollution involved in this lawsuit (including written complaints) to the Kansas Corporation Commission, which has investigated the complaints, but which has not acted on them.

The plaintiffs "supplement" paragraphs 4, 5, 7, and 10 above with the information that the damage to the areas of land mentioned in those paragraphs is continuing in nature. They do not support this assertion. The plaintiffs also "supplement" paragraph 11 above with the information that the Kansas Corporation Commission is now in the process of acting on their investigation. This assertion is also unsupported by the plaintiffs. The plaintiffs are not requesting both an equitable order that defendant clean up the land, *and* $70,000 in damages for the costs of cleaning up the land, as defendant contends, but either an injunction or damages sufficient to clean up the land.

The defendant has moved for partial summary judgment on several of plaintiffs' claims. The court is now prepared to address each one of these claims.

I. *Plaintiffs' Claim for Injunctive Relief or, in the Alternative, Equivalent Money Damages*

■ The plaintiffs ask the court for an injunction requiring the defendant to clean

up all the land that was polluted in the past. In the alternative, plaintiffs request an award of money damages sufficient to clean up the land, which, according to plaintiffs' estimate, would cost approximately $70,000. The defendant argues that it would be inappropriate for this court to grant the equitable relief requested because an injunction only operates in the future to prevent later acts and is not an appropriate method to obtain relief for past or completed acts. The court agrees. "An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions." *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir.1987). "Injunctive relief is designed to deter future misdeeds, not to punish for past conduct." *Committee of Cent. American Refugees v. I.N.S.*, 682 F.Supp. 1055, 1064 (N.D.Cal.1988). In *Socialist Workers Party v. Attorney General of United States*, 642 F.Supp. 1357 (S.D.N.Y.1986), the court noted:

> An injunction can be issued only to prevent existing or presently threatened injuries. *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed 602 (1931). Past injury may have a bearing upon whether an injunction should be granted, but only as to the likelihood that the past misconduct will be repeated. To obtain injunctive relief based on past injury the plaintiff must show a real and immediate threat that the injury will be continued or repeated. *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

642 F.Supp. at 1425. The court will not grant plaintiffs' request for an injunction ordering defendant to clean up the pollution which has happened in the past, and grants defendant's motion for summary judgment on that issue. This ruling, of course, does not preclude the court from exercising its equitable powers at the conclusion of the jury trial and ordering an injunction, if appropriate, to prevent the defendant from causing any future damage to the plaintiffs' land.

The plaintiffs request money damages sufficient to clean up the land as an alternative to injunctive relief for past pollution. They estimate the cost of clean-up to be approximately $70,000. Defendant argues that this unreasonably exceeds the value of the land. The parties have stipulated that the value of the undamaged land is $600 per acre. The area of plaintiffs' land that has been damaged comprises 8.927 acres. The value of the undamaged land is therefore less than $5,500, assuming that the value of the land after injury is zero. The measure of damages for permanent injury to land is well established. The measure of damages is the difference in the fair market value of the land before and after injury. *Williams v. Amoco Production Co.*, 241 Kan. 102, 110, 734 P.2d 1113 (1987), and cases cited therein. The measure of damages for temporary injury to land is "the reasonable cost of repairing the property, with interest, which may include the value of the use thereof during the period covered by the suit, or it may be the diminution in the rental value of the property, together with such special damages to crops, improvements, etc." *Kiser v. Phillips Pipe Line Co.*, 141 Kan. 333, 336, 41 P.2d 1010 (1935). Damages cannot exceed the fair market value of the land before injury however. *Anderson v. Rexroad*, 180 Kan. 505, 513, 306 P.2d 137 (1957). The plaintiffs argue that this is an archaic theory of damages in light of the public policy in Kansas to clean up the pollution caused by oil and gas operations, and that it is time for the case law to change. Plaintiffs submit that the new measure of damages should be the cost of restoring the soil to its original condition. The plaintiffs offer no support for this position other than the public policy argument. The court is gravely concerned about the ongoing pollution of our natural resources, but will not judicially legislate and rule contrary to the stated law concerning the measure of damages issue. The court therefore grants defendant's motion for summary judgment on plaintiffs' claim for damages in excess of the fair market value of the land before injury.

## II. *Plaintiffs' Claim for Aggravation and Harassment*

The plaintiffs argue that they are entitled to damages for the aggravation

and harassment caused by defendant's repeated acts of pollution. Plaintiffs contend that these repeated acts of pollution were done with wanton disregard and gross indifference to their rights as landowners. Defendant argues that plaintiffs' claim for aggravation and harassment can be characterized as either negligent infliction of emotional distress or the tort of outrage. "There may be no recovery in Kansas for emotional distress unless that distress results in 'physical impact': an actual physical injury to the plaintiff." *Anderson v. Scheffler*, 242 Kan. 857, 861, 752 P.2d 667 (1988). The plaintiffs have not alleged physical injury, the defendant has shown there is an absence of proof on this essential element, and the plaintiff has failed to make a showing sufficient to establish the existence of an element essential to their case, and on which plaintiffs would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552–53. The plaintiffs also have not alleged the tort of outrage. The tort of outrage as a cause of action was recognized in *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 820, 529 P.2d 104 (1974), but the Kansas Supreme Court has yet to find a case where the conduct alleged met the essential elements of the tort. *Burgess v. Perdue*, 239 Kan. 473, 476, 721 P.2d 239 (1986). To establish a cause of action for the tort of outrage proof of four elements is required: "(1) The conduct of the defendant must be intentional or in reckless disregard of the plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress must be extreme and severe." *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). The court finds that the plaintiffs have failed to make a sufficient showing to establish the existence of the elements essential to the tort of outrage. There simply cannot be a genuine issue of material fact since a complete failure of proof concerning the essential elements necessarily renders all other facts immaterial. *See*

*Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The court will therefore grant defendant's motion for summary judgment on plaintiffs' claim for aggravation and harassment.

### III. *Plaintiffs' Claim for Punitive Damages*

The pretrial order reflects that plaintiffs are asking for punitive damages for willfully failing to clean up the polluted areas of land. One of plaintiffs' theories of recovery is that the defendant had a contractual obligation to restore the land to its original condition (Dk. 59, p. 11).

The plaintiffs in *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985), brought a breach of contract action for damages to their crops and land alleged to have resulted from the defendant's oil drilling activities on their land. 238 Kan. at 111, 114, 708 P.2d 515. Included in the oil and gas lease at issue in *Cornwell* were provisions concerning defendant's liability for damages its operations caused to plaintiffs' land. 238 Kan. at 111–112, 708 P.2d 515. One provision stated " '2.d. Lessee shall pay for all loss of crops and damages to the land occasioned by its operations.' " 238 Kan. at 111, 708 P.2d 515. Another provision stated:

"6. It is further agreed that Lessee shall be liable for all damages caused to the Lessor by reason of oil, salt water, or other fluid resulting from Lessee's operations, and that in the event the Lessee permits any such liquids to run over the surface of said premises, such oil and liquids shall be scraped up to a depth of the soil saturation and removed, or buried on the premises at a minimum depth of thirty-six inches (36″) and any depressions resulting therefore shall be refilled with good clean top soil, and leveled to the surrounding surface. In connection therewith, Lessee shall have the right to use top soil from the leased premises for the purpose of filling any such depressions."

238 Kan. at 112, 708 P.2d 515. The district court awarded actual damages and punitive damages. One of the issues on appeal was

whether the district court erred in awarding punitive damages. The reason the district court awarded punitive damages was because it found that the defendant willfully breached the oil and gas lease and the operating agreement. 238 Kan. at 120, 708 P.2d 515. The Kansas Supreme Court reversed the district court's award of punitive damages, noting, "[u]nder Kansas law, breach of a contract, standing alone, does not call for punitive damages even if the breach is intentional and unjustified, but such damages are allowable if there is some independent tort indicating malice, fraud, or wanton disregard of the rights of others." 238 Kan. at 120, 708 P.2d 515. The independent tort must cause additional injury. 238 Kan. at 121, 708 P.2d 515.

Defendant argues *Cornwell* is directly on point to the issue of punitive damages in the case at bar. The defendant fails to provide the court with the oil and gas lease it entered into with the plaintiffs to show there are liability provisions in its lease that are similar to the provisions in *Cornwell*. If defendant can show to the court that there are similar provisions in its oil and gas lease and that all damage to the plaintiffs' land flowed directly from the defendant's breach of contract, then the court would be inclined to grant defendant summary judgment on plaintiffs' claim for punitive damages. The plaintiffs argue that they are alleging more than just breach of contract; they are also alleging that defendant's repeated acts of pollution evinces a gross and wanton disregard for their rights as landowners. The plaintiffs' complaint sounds in negligence, and the pretrial order reflects that plaintiffs are alleging negligence as a theory of recovery. However, the court will not allow the negligence theory to be presented to the jury if in reality this is only a breach of contract claim. Every willful breach of contract does not rise to the level of negligence. If this were the case, the theory of breach of contract would be subsumed under the theory of negligence, and the result in *Cornwell* would have been different. The court orders the parties to do additional briefing on this point before the court decides the issue of punitive damages.

Specifically, the defendant should submit the oil and gas lease, directing the court's attention to the liability provisions of the lease, and the parties should present their arguments as to whether this action should be characterized as a breach of contract or negligence claim in light of the liability provisions of the lease.

## IV. *Statute of Limitations*

Defendant asks this court to grant summary judgment on Counts II, V, VII, VIII, IX, XI, XII, and that part of Count XIII which relates to Area 19 on the survey map, on the ground that the two year statute of limitations bars these claims. The plaintiffs state that Counts XI and XII should be dropped from the petition, as the areas of land mentioned in those two counts have now been cleaned up. The court will therefore grant summary judgment on these two counts in favor of defendant.

The defendant argues that the injuries to the areas of land asserted in Counts II, V, VII, VIII, IX, and the part of Count XIII mentioned above, occurred prior to December 1984 when it first acquired the lease, and that it cannot be held liable for the previous acts of others. The plaintiffs assert that the defendant is simply the result of a merger between Skelly Oil and Getty Oil who previously held the lease, and that the defendant and these two companies are really one and the same. Defendant denies this, stating that it was another Texaco entity which merged with Skelly and that Texaco entity is not a party to this action. The parties do not provide the court with any evidence to support their positions, and the court will not grant summary judgment on the ground that the injuries alleged in the counts mentioned above were caused by the acts of others not parties to this action.

The defendant also argues however, that the court should grant summary judgment on these counts because the injuries alleged in those counts occurred more than two years prior to suit and the fact of pollution was reasonably ascertainable, if not indeed ascertained, by the plaintiffs at

least two years prior to suit. This is the statute of limitations for an action for injury to the rights of another, not arising on contract, and not otherwise enumerated in K.S.A. 60–513. K.S.A.1988 Supp. 60–513(a)(4). If it is true however, that plaintiffs' action is really one for breach of contract, as defendant argues concerning the issue of punitive damages, then the five year statute of limitations found at K.S.A. 60–511(1) would apply. The plaintiffs argue that a cause of action does not accrue until the tort causing the liability ceases to be committed. They offer no support for this contention, and it is completely without merit.

Even if the court found that the two-year statute of limitations applies to Counts II, V, VII, VIII, IX, and that part of Count XIII relating to Area 19 on the survey map, the court would have to know how the injury is characterized in each of those counts before it could apply the statute of limitations. Permanent injuries are those which are practically irremediable. The cause of the injury is fixed and the property will always remain subject to that injury. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983). "If an injury is permanent in character, all the damages caused thereby whether past, present, or prospective, must be recovered in a single action." 233 Kan. at 262, 662 P.2d 1203. Temporary injuries, on the other hand, are those injuries which are "intermittent and occasional and the cause of damages remediable, removable, or abatable. Damages are awarded on the theory that the cause of the injury may and will be terminated." 233 Kan. at 262, 662 P.2d 1203. In *Gowing v. McCandless*, 219 Kan. 140, 547 P.2d 338 (1976), the Kansas Supreme Court noted:

> Where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, continuing or consequential in nature, it has been held that the limitations period starts to run only when the plaintiffs' land or crops are actually harmed by overflow, and for purposes of the statute of limitations, each injury causes

a new cause of action to accrue, at least until the injury becomes permanent.

219 Kan. at 144, 547 P.2d 338 (citations omitted). The court also noted in *Gowing* that:

> Where permanent damages to the land are sought, and the evidence discloses permanent damages, the action claiming such damages must be brought within the two year statute of limitations. Thus in *Thierer v. Board of County Commissioners*, 212 Kan. 571, 512 P.2d 343, the cause of action for permanent damages to farmland was held to accrue when substantial injury was reasonably ascertainable.

219 Kan. at 146, 547 P.2d 338. The question of whether the injury is permanent or temporary has been recognized to be a question of fact for the jury in *Berry v. Shell Petroleum Co.*, 140 Kan. 94, 105, 33 P.2d 953 (1934).

Count II of plaintiffs' "amended-supplemental petition" alleges both permanent and continuing injury, so the court is uncertain how to characterize the injury for statute of limitations purposes. It is uncontroverted that the damages alleged in Count II were caused by leaching from improperly plugged oil wells that were abandoned in the 1940s. The fact that wells were abandoned in the 1940s does not speak to the issue of when the abandoned wells first caused substantial injury or when the fact or injury became reasonably ascertainable by the plaintiffs.

Count V of plaintiffs' "amended-supplemental petition" again alleges both permanent and continuing injury. It is uncontroverted that the damages alleged in Count V were first caused in 1976, when the area was damaged by salt water. Other salt water overflows that happened in 1981–83 also damaged the land. Plaintiff Robert Maxedon observed the spills either at the time they occurred or shortly thereafter and has been trying to get the pollution in that area fixed ever since 1976. The court would be inclined to grant defendant summary judgment on Count V if the damage is to be characterized as permanent, since the salt water overflows first caused sub-

stantial injury in 1976 and the fact of injury was ascertained by one of the plaintiffs. However, if the damage is to be characterized as temporary, then the plaintiffs would be able to recover damages for the two years prior to suit.

The plaintiffs do not specifically allege permanent or temporary damage in Count VII. It is uncontroverted that the damages alleged in that count first occurred in the 1940s and arise either from an abandoned well that was improperly plugged or from a sludge pit created when wells in the area were drilled. Again, this fact does not address the question of which act first caused substantial injury or when the injury was reasonably ascertainable.

Instead of going through the same litany with respect to Counts VIII, XI, and XIII, the court will simply note that the same problems exist in those counts as exist in Counts II, V, and VII. The court directs the parties to submit additional briefs on the issue of permanent versus temporary damage and the role this determination plays in applying the statute of limitations. The parties should also address the applicability of the five year statute of limitations on breach of contract. The court will not grant defendant summary judgment at this time on any of these counts on the ground that they are barred by the statute of limitations, and will await the parties' briefs on this issue.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted on plaintiffs' claim for injunctive relief ordering the defendant to clean up the past pollution, or in the alternative, equivalent money damages to effectuate clean up of the land.

IT IS THEREFORE FURTHER ORDERED that defendant's motion for summary judgment is granted on plaintiffs' claim for aggravation and harassment.

IT IS THEREFORE FURTHER ORDERED that defendant's motion for summary judgment is denied at this time on plaintiffs' claim for punitive damages.

IT IS THEREFORE FURTHER ORDERED that defendant's motion for summary judgment is granted on Counts XI

and XII of plaintiffs' "amended-supplemental petition".

IT IS THEREFORE FURTHER ORDERED that defendant's motion for summary judgment is denied at this time on Counts II, V, VII, VIII, IX, and the part of Count XIII relating to area 19 on the survey map of plaintiffs' "amended-supplemental petition".

IT IS THEREFORE FURTHER ORDERED that both parties file additional briefs within 10 days of the date of this order on the issue of punitive damages in accordance with the court's discussion, and on the issue of the statute of limitations, keeping in mind the role that the permanent versus temporary injury distinction plays in applying the statute. The parties shall file their briefs simultaneously.

## OPINION ON DAMAGES

In its previous order of March 31, 1989 (Dk. 63), the court directed the parties to further brief the punitive damages issue and the statute of limitations issue in connection with defendant's motion for partial summary judgment. The parties have complied with the court's request (Dk. 64–66), and the court is prepared to rule on these two issues.

*Punitive Damages*

The defendant previously argued that any liability for damages arises strictly from the oil and gas lease entered into by the parties. The defendant stated that *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985); was directly on point. The oil and gas lease in *Cornwell* was very specific in its liability provisions; the lessee agreed to be liable for *all* damages to the lessor caused by reason of oil, salt water, or other fluid resulting from lessee's operations. This liability extended to damages to the land itself as well as to loss of crops. 238 Kan. at 111–112. The district court had allowed punitive damages for willful breach of contract. The Kansas Supreme Court reversed, holding, "[u]nder Kansas law, breach of a contract, standing alone, does not call for punitive damages even if the breach is intentional and unjustified,

but such damages are allowable if there is some independent tort indicating malice, fraud, or wanton disregard of the rights of others." 238 Kan. at 120, 708 P.2d 515. All of the injury in *Cornwell* flowed directly from the breach of contract. 238 Kan. at 121, 708 P.2d 515. This court directed the parties to provide the court with the oil and gas lease relevant to the case at bar, and noted that if defendant could show its oil and gas lease contained provisions similar to those in *Cornwell* and could show that all damage to the plaintiff's land flowed directly from the defendant's breach of contract, the court would be inclined to grant summary judgment on plaintiffs' claims for punitive damages (Dk. 63, p. 14).

Both parties have provided the court with copies of the relevant oil and gas lease. The only provision in the oil and gas lease which speaks to defendant's liability for damages states that "[l]essee shall pay for damages caused by its operations to growing crops on said land." The five-year statute of limitations found at K.S.A. 60–511(1) controls these damages. Defendant concedes that in *Monfort v. Layton*, 1 Kan. App.2d 622, 571 P.2d 80 (1977), the Kansas Court of Appeals construed the same provision and found that it referred to temporary crop damage as distinguished from permanent soil damage. 1 Kan.App.2d at 628. The plaintiffs contend that defendant was negligent in its operation of the oil and gas lease by allowing salt water, chemicals and oil to be spilled on the surface which polluted the soil and water (Dk. 59, p. 7). Such damage to the soil and water is tortious conduct which is independent from any damage to growing crops, and causes additional injury. The court finds the present case to be distinguishable from *Cornwell*. The defendant also argues that any damage which is not covered under the express provisions of the oil and gas lease are covered under implied covenants to the lease, and therefore the liability for such damages is still contractual in nature and punitive damages may not be awarded. The defendant does not bring any applicable implied covenant to the court's attention however, and this conclusory state-

ment is not sufficient to grant summary judgment on the issue of punitive damages.

Punitive damages are allowed in Kansas when, for instance, elements of gross negligence enter into the controversy or when there has been a willful and wanton invasion of the injured party's rights. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 415, 681 P.2d 1038 (1984), *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984). Plaintiff Robert Maxedon's affidavit states repeated instances of salt water spills and oil leaks which continue to damage the groundwater and the land surface. The party moving for summary judgment has the burden of proving there is an absence of evidence to support the nonmoving party's case. The court finds that the defendant has failed in its burden of proof on the issue of punitive damages, and therefore denies defendant's motion for summary judgment on this issue.

*Statute of Limitations*

■ The defendant previously moved for summary judgment on Counts II, V, VII, VIII, IX, and that part of Count XIII which relates to area 19 on the survey map, on the ground that the statute of limitations completely barred these claims. The court requested that the parties do additional briefing on this issue, keeping in mind the role that the permanent versus temporary injury distinction plays in applying the two-year statute of limitations. The court has discussed the implications of such distinctions in its prior order, and that discussion will not be repeated here.

The defendant argues that the damages involved in Counts II, V, VII, VIII, IX and XIII are permanent in nature. In support of this conclusion, defendant cites pages 22 and 29 of plaintiff Robert Maxedon's deposition in which he characterizes the soil damage alleged in Count I to be permanent in nature. Count I is not one of the counts on which defendant has requested summary judgment. Defendant does note that in Count II of plaintiffs' "amended-supplemental petition" that plaintiffs do allege the damaged land in that count to be sterile. Defendant does not make any attempt

to show, through the kinds of evidentiary material contemplated by Fed.R.Civ.P. 56, that the damages alleged in remaining Counts V, VII, VIII, IX and XIII are permanent in nature. Plaintiffs argue that the damages in those counts are temporary because the damages are remediable or abatable in nature. The pretrial conference order reflects that the plaintiffs allege the damage to be continuing in nature (Dk. 59, p. 7), and the pretrial order controls the subsequent course of the action. *See* Fed. R.Civ.P. 16(e). The court finds that there remains a genuine issue of material fact as to the nature of the damages in Counts II, V, VII, VIII, IX, and that part of XIII which relates to area 19 on the survey map, and that summary judgment on these counts on the ground that the statute of limitations completely bars these claims is inappropriate. The court therefore denies defendant's motion for summary judgment on these counts.

### Measure of Damages

■ In its previous order of March 31, 1989, the court noted that the measure of damages for temporary injury to land is "the reasonable cost of repairing the property, with interest, which may include the value of the use thereof during the period covered by the suit, or it may be the diminution in the rental value of the property, together with such special damages to crops, improvements, etc.," citing *Kiser v. Phillips Pipe Line Co.*, 141 Kan. 333, 336, 41 P.2d 1010 (1935). The court also noted that temporary damages could not exceed the fair market value of the land before injury however, citing *Anderson v. Rexroad*, 180 Kan. 505, 513, 306 P.2d 137 (1957). The court ruled that it would not allow plaintiffs' claim for damages in excess of the fair market value before injury. The court still believes its position to be correct; however, in *Miller v. Cudahy Co.*, 858 F.2d 1449 (10th Cir.1988), the Tenth Circuit affirmed the district court's award of temporary damages which exceeded the potential recovery for permanent damages, which is the difference in the fair market value of the land before and after the injury 858 F.2d at 1456. The district court calculated temporary damages as the loss of value in the use of the property. The Circuit Court noted in *Miller* that "[a]ppellants' assertion that temporary damages may not exceed the value of the property injured, or essentially that there must be a 'cap' on an award of temporary damages, is unsupported by pertinent Kansas authority." 858 F.2d at 1457. Unfortunately, the Circuit Court does not cite any authority to support its statement, and makes no reference to the *Alexander* decision this court relied on in its previous ruling. For other support that the rule in Kansas is that temporary damages may not exceed the pre-injury value of the damaged property, *see* Turner, *The Role of Private Litigation in Protecting Against Groundwater Pollution*, 35 U.Kan.L.Rev. 443, 455 (1987); Lungren, *Landowners' Remedies for Property Damage by Oil and Gas Lease Operators*, 50 J.Kan.B.A. 200, 209 (1981). The court believes that the Circuit is wrong on this point, but, for obvious reasons, is compelled to follow the holding in that case. The court therefore retracts its previous position that it will not allow the plaintiffs to recover any damages in excess of the fair market value of the land before injury under any measure of damages. If it develops from the evidence at trial that the injury to plaintiffs' land is temporary in nature and that temporary damages should be awarded, it is possible that the evidence may also show the amount of temporary damages to be awarded exceeds the value of the property injured.

### Plaintiffs' New Arguments

Plaintiffs' supplemental brief raises two new arguments the court feels it must address. The plaintiffs' assert that the salt water pollution of the land surface and groundwater is a continuing nuisance. This is the first time plaintiffs have asserted the nuisance theory of recovery; the court will not allow plaintiffs to add a new theory of recovery at this late date.

The plaintiffs allege there are facts which support the tort of outrage and asks the court to amend the complaint and the pretrial order to allege the tort of outrage. The court has granted defendant's summa-

ry judgment motion on this issue, and that order stands. Plaintiffs' request to amend the complaint and the pretrial order in this regard is denied.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment on the issue of punitive damages is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on Counts II, V, VII, VIII, IX, and that part of XIII which relates to area 19 on the survey map on the grounds that these claims are completely barred by the statute of limitations is denied.

IT IS FURTHER ORDERED that any request by the plaintiffs to add a new theory of recovery is denied.

IT IS FURTHER ORDERED that plaintiffs' request that the court amend the "amended-supplemental petition" and pretrial order to allege the tort outrage is denied.